Filed 12/10/13

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND PLACER FANDINOLA,<br><br>      Defendant and Appellant. | C071256<br><br>(Super. Ct. Nos. 12F02342,<br>      12F02592) |

APPEAL from a judgment of the Superior Court of Sacramento County, John P. Winn, Judge.  Affirmed as modified.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Raymond Placer Fandinola entered into a negotiated disposition of two superior court cases.  In case No. 12F02342, defendant pled no contest to one count of second degree burglary, one count of possession of a check or money order with the

--------------------------------------------------

*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the discussion.

1

intent to defraud, and two counts of possession and use of personal identity information. Six related counts were dismissed. In case No. 12F02592, four theft related counts were dismissed.

Defendant was sentenced to serve an aggregate term of five years imprisonment (three years (upper term) for the burglary, plus three consecutive terms of eight months (one-third the middle term) for the remaining counts). Pursuant to Penal Code section 1170, subdivision (h),[1] added to California's sentencing scheme by "the 2011 Realignment Legislation addressing public safety" (realignment legislation) (Stats. 2011, ch. 15, §§ 1, 450), and thereafter amended to its current form (Stats. 2011, ch. 361, § 6.7; Stats. 2012, ch. 43, § 27), the trial court ordered defendant to serve the first three years of his sentence in the county jail and the remaining two years on mandatory supervision. (§ 1170, subd. (h)(5)(B).) Among other orders, the trial court imposed a probation supervision fee of $46 per month and a urine testing fee of $25 per test, ordering defendant to "report to the Department of Revenue Recovery" upon his release from the county jail "for a financial evaluation and recommendation of ability to pay." As the trial court explained to defendant at sentencing: "[T]hat's going to be something you have to deal with when you get out. If you cannot pay the fines, you can work with probation, the Department of Revenue and Recovery to modify the fines."

On appeal, defendant contends: (1) the trial court erred by failing to determine his ability to pay before imposing the probation supervision and urine testing fees; and (2) the trial court was not authorized to impose the urine testing fee because defendant was not convicted of any drug-related offense. We directed the parties to address in supplemental letter briefs whether section 1203.1b, or any other statutory provision, authorized imposition of the probation supervision fee in this case, where defendant was not granted probation nor given a conditional sentence, but was instead sentenced to

---

[1]     Undesignated statutory references are to the Penal Code.

2

serve a portion of his term on mandatory supervision pursuant to section 1170, subdivision (h). We conclude the answer is no. As we explain, the Legislature has given the trial court the authority to order a defendant to pay the reasonable cost of probation supervision "in any case in which a defendant is granted probation or given a conditional sentence." (§ 1203.1, subd. (a).) And while section 1170, subdivision (h), authorizes the trial court to suspend execution of a concluding portion of a defendant's term, "during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation" (§ 1170, subd. (h)(5)(B)(i)), we conclude this provision does not authorize the trial court to order a defendant to pay the cost of such supervision. Thus, regardless of whether the trial court failed to determine defendant's ability to pay, the order requiring defendant to pay the cost of probation supervision is unauthorized and must be stricken.

We also directed the parties to address in their supplemental briefs the question of whether the trial court possessed the authority to order defendant to pay the cost of urine testing, assuming such cost could not be imposed under section 1203.1ab (because defendant was not convicted of any offense involving the unlawful possession, use, sale, or other furnishing of any controlled substance) or section 1210.1 (because defendant was not convicted of a nonviolent drug possession offense). Defendant argues, as he did in his initial briefing on appeal, the trial court had no authority to order him to undergo urine testing, and therefore no authority to order him to pay the cost of such testing. The Attorney General argues the broad authority of a trial court to impose reasonable probation conditions under section 1203.1, subdivision (j), authorizes both an order to submit to urine testing and an order to pay for such testing. Read in conjunction with section 1170, subdivision (h)(5)(B), argues the Attorney General, such authority should also extend to defendant's case even though he was not granted probation, but was instead sentenced to serve the concluding portion of his term on mandatory supervision.

3

We need not decide whether the trial court had the authority to order defendant to submit to urine testing under section 1203.1, subdivision (j), because the only authority to impose the costs of such testing is found in section 1203.1b, which we hold to be inapplicable to defendant's placement on mandatory supervision.[2] We therefore modify the judgment to strike this order as well.

## FACTS

We dispense with a detailed recitation of the facts as they are unnecessary to our resolution of this appeal. Suffice it to say that between February 21 and March 12, 2012, defendant entered a commercial building occupied by a major retailer with the intent to commit larceny or any felony therein. During the same time period, he willfully and unlawfully possessed a completed check, money order, traveler's check, warrant, or county order with the intent to utter, pass, or facilitate the utterance and passage of the same in order to defraud a person. He also willfully and unlawfully obtained the personal identifying information of two victims, without their authorization or consent, and used the information to obtain credit, goods, services, or information.

## DISCUSSION

### I

### *Probation Supervision Fee*

Does section 1203.1b, or any other statutory provision, authorize imposition of the probation supervision fee in this case, where defendant was not granted probation nor given a conditional sentence, but was instead sentenced to serve a portion of his term on mandatory supervision pursuant to section 1170, subdivision (h)? We conclude the answer is no.

---

[2]    In his briefing on appeal, defendant asks this court to strike the "order for payment of a $25 urinalysis testing fee per test." Defendant does not request that the testing order be stricken.

4

## A.

### *Additional Background*

After defendant entered his plea, defense counsel waived referral to the probation department. Noting the probation department had conducted "no actual interview of the client," defense counsel objected to several "post conviction release conditions." Counsel objected that defendant "will be in custody for the next year and a half. His ability to pay determination is one year from today's date. And, therefore, he has no ability to pay within that one year window because he will be in custody. [¶] I'm objecting to page five, probation supervision costs of $46 monthly. . . . I'm going to object based on no ability to pay from one year from today's date." Counsel further objected to the order to report to the Sacramento County Department of Revenue Recovery (Revenue Recovery).

After ruling on defense counsel's objections to various release conditions, the trial court stated: "Then regarding all of the other fines that there was an objection to, we are basically premature. . . . You're entitled to half time. [¶] So when you get out -- I don't know what your financial situation will be when you get out. So I'm deleting a couple of fines. But the objections that your attorney has made are noted. But that's going to be something you have to deal with when you get out. If you cannot pay the fines, you can work with probation, [Revenue Recovery], to modify the fines. But at this point I'm going to impose all of the other ones." The trial court's minutes order defendant to "report to probation within 48 hours of release from custody." In addition, defendant is ordered to "report to [Revenue Recovery] for a financial evaluation and recommendation of ability to pay costs for and in the amount of $46.00 per month for probation supervision."

## B.

### *Analysis*

Section 1203.1b, subdivision (a), provides in relevant part: "In any case in which a defendant is . . . *granted probation or given a conditional sentence*, the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . . The reasonable cost of these services and of probation supervision . . . shall not exceed the amount determined to be the actual average cost thereof. . . . The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver." (Italics added.)

Subdivision (b) of this provision states that "[w]hen the defendant fails to waive the right provided in subdivision (a) to a determination by the court of his or her ability to pay and the payment amount, the probation officer shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made. The court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer, or his or her authorized representative." (§ 1203.1b, subd. (b).)

6

Here, there is no dispute that defendant was neither granted probation nor given a conditional sentence. Instead, he was sentenced to serve five years, three of those years in the county jail, the remaining two years on mandatory supervision. This sentence was imposed pursuant to section 1170, subdivision (h)(5), providing in relevant part: "The court, when imposing sentence pursuant to paragraph (1) or (2)[3] of this subdivision, may commit the defendant to county jail as follows: [¶] . . . [¶] (B)(i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. The period of supervision shall be mandatory, and may not be earlier terminated except by court order . . . . [¶] (ii) The portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision."

The Attorney General argues that, read together, sections 1203.1b and 1170, subdivision (h)(5)(B), authorize the probation supervision fee in this case. In determining whether this is so, we employ well-settled rules of statutory construction. "Our

---

**3** Section 1170, subdivision (h)(1), provides: "Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years." Paragraph (2) of this subdivision provides: "Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense." Paragraph (3) of this subdivision provides for a state prison commitment "where the defendant (A) has a prior or current felony conviction for a serious felony . . . or a prior or current conviction for a violent felony . . . , (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony . . . or a violent felony . . . , (C) is required to register as a sex offender . . . , or (D) is convicted of a crime and as part of the sentence an enhancement [for multiple felonies involving fraud or embezzlement] is imposed." (§ 1170, subd. (h)(1)-(3).)

fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737; *San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 831.) We also keep in mind "the cardinal rule that courts may not add provisions to a statute." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827.)

As relevant here, section 1203.1b unambiguously applies to cases "in which a defendant is granted probation or given a conditional sentence." (§ 1203.1b, subd. (a).) Section 1170, subdivision (h)(5)(B)(i), authorizes the trial court to suspend execution of a concluding portion of a defendant's term, "during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation," but this does not mean placing a defendant on mandatory supervision is the equivalent of granting probation or giving a conditional sentence. Indeed, section 1170, subdivision (h), comes into play only after probation has been denied. (See *People v. Cruz* (2012) 207 Cal.App.4th 664, 671 ["once probation has been denied, felons who are eligible to be sentenced under realignment will serve their terms of imprisonment in local custody rather than state prison"].) Moreover, section 667.5 provides for a one-year enhancement for "prior prison terms," including a "term imposed under the provisions of paragraph (5) of subdivision (h), of Section 1170, wherein a portion of the term is suspended by the court

8

to allow mandatory supervision." (§ 667.5, subd. (b).) Thus, the Legislature has decided a county jail commitment followed by mandatory supervision imposed under section 1170, subdivision (h), is akin to a state prison commitment; it is not a grant of probation or a conditional sentence.

Simply put, section 1203.1b applies "in any case in which a defendant is granted probation or given a conditional sentence." (§ 1203.1b, subd. (a).) We may not add "or placed on mandatory supervision" to this provision. Thus, section 1203.1b cannot serve as authority to impose the probation supervision fee in this case.

This conclusion is bolstered by the fact that the Legislature, following enactment of the realignment legislation, amended section 1202.45 to provide for a "mandatory supervision revocation restitution fine" in addition to the parole revocation restitution fine already provided for in the statute. (Stats. 2012, ch. 762, § 1.) The Legislature did not similarly amend section 1202.44, which provides for a probation revocation restitution fine. This tells us two things. First, by adding the mandatory supervision revocation restitution fine to section 1202.45 instead of section 1202.44, the Legislature appears to indicate its view that mandatory supervision is more similar to parole than probation. Second, and more importantly, this amendment indicates the Legislature understood mandatory supervision is neither probation nor parole, and specific authorization for a mandatory supervision revocation restitution fine was therefore required even though probation and parole revocation restitution fines were already authorized by sections 1202.44 and 1202.45, respectively. Similarly, the Legislature amended section 1203.9, which already provided for the transfer of probation cases to the county in which the probationer resides and authorized an order for reimbursement of the reasonable costs of processing the transfer, to also apply to cases in which a person is released on mandatory supervision. (Stats. 2012, ch. 43, § 32.) The amendment simply added the words "or mandatory supervision" after "probation," and also added the words "or supervised person" after "probationer." (*Ibid*.) We must therefore conclude the

9

Legislature understood how to amend a statute to authorize an order for costs associated with mandatory supervision. No such amendment was made with respect to section 1203.1b.

Nor can the order to pay the cost of probation supervision be considered part of the "terms, conditions, and procedures generally applicable to persons placed on probation." (§ 1170, subd. (h)(5)(B)(i).) Such an order is collateral to, and may not be made a condition of, granting probation. (*People v. Bennett* (1987) 196 Cal.App.3d 1054, 1056.)

Having found no other statutory authority for the probation supervision fee, we must strike it as unauthorized.

## II

### *Urine Testing Fee*

Defendant also contends the trial court had no authority to order him to pay the cost of urine testing. We agree.

The Attorney General concedes that a urine testing fee was not authorized by either section 1203.1ab or section 1210.1. We accept the concession. Section 1203.1ab provides: "Upon conviction of any offense involving the unlawful possession, use, sale, or other furnishing of any controlled substance, as defined in Chapter 2 (commencing with Section 11053) of Division 10 of the Health and Safety Code, in addition to any or all of the terms of imprisonment, fine, and other reasonable conditions specified in or permitted by Section 1203.1, unless it makes a finding that this condition would not serve the interests of justice, the court, when recommended by the probation officer, shall require as a condition of probation that the defendant shall not use or be under the influence of any controlled substance and shall submit to drug and substance abuse testing as directed by the probation officer. If the defendant is required to submit to testing and has the financial ability to pay all or part of the costs associated with that testing, the court shall order the defendant to pay a reasonable fee, which shall not exceed

the actual cost of the testing." We agree the urine testing fee could not be imposed under this provision because defendant was not convicted of any crime enumerated in the section. Similarly, section 1210.1 is inapplicable since that provision applies to "any person convicted of a nonviolent drug possession offense." (§ 1210.1, subd. (a).)

Nor does Health and Safety Code section 11551 apply in this case. This section provides in relevant part: "(a) Whenever any court in this state grants probation to a person who the court has reason to believe is or has been a user of controlled substances, the court may require as a condition to probation that the probationer submit to periodic tests by a city or county health officer, or by a physician and surgeon appointed by the city or county health officer with the approval of the Attorney General, to determine, by whatever means is available, whether the probationer is addicted to a controlled substance. [¶] . . . [¶] (b) In any case in which a person is granted parole by a county parole board and the person is or has been a user of controlled substances, a condition of the parole may be that the parolee undergo periodic tests as provided in subdivision (a) and that the county or city health officer, or the physician and surgeon appointed by the city or county health officer with the approval of the Attorney General, shall report the results to the board. [¶] (c) In any case in which any state agency grants a parole to a person who is or has been a user of controlled substances, it may be a condition of the parole that the parolee undergo periodic tests as provided in subdivision (a) and that the county or city health officer, or the physician and surgeon appointed by the city or county health officer with the approval of the Attorney General, shall report the results of the tests to such state agency." (Health & Saf. Code, § 11551, subds. (a)-(c).) This section is inapplicable, as the Attorney General acknowledges, "because the trial court had no information as to whether [defendant] may have used controlled substances." Nor does this section authorize the trial court to order the defendant to pay the costs of the testing. Quite the contrary, subdivision (d) provides: "The cost of administering tests pursuant to subdivisions (a) and (b) shall be a charge against the county. The cost of administering

11

tests pursuant to subdivision (c) shall be paid by the state." (Health & Saf. Code, § 11551, subd. (d).)

Nevertheless, the Attorney General argues the urine testing fee was authorized by section 1203.1. Not so. This section provides that the trial court may suspend the imposition or execution of sentence and grant probation "upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a).) "The trial court's discretion, although broad, is nonetheless subject to the limitation that conditions must be 'reasonable.' " (*People v. Beal* (1997) 60 Cal.App.4th 84, 86, quoting § 1203.1, subd. (j) [authorizing the trial court to impose any "reasonable conditions" of probation, "as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer"].)

Assuming, without deciding, urine testing could be imposed as a reasonable probation condition in this case, the order to pay for such testing is unauthorized. In *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, the Court of Appeal held a trial court may order periodic polygraph examinations as a condition of probation, but an order requiring the defendant to pay for the examinations may not be imposed as a probation condition. Instead, the trial court must "issue a separate order for the payment of such costs. [Citations.] This order can be enforced through a civil action -- not through contempt proceedings, or the threat, express or implied, of revocation of probation." (*Id*. at pp. 321-322.) We conclude the same holds true for urine testing. Because the order requiring defendant to pay the cost of urine testing cannot be considered part of the "terms, conditions, and procedures generally applicable to persons placed on probation," section 1170, subdivision (h)(5)(B)(i), does not authorize the order. And while a separate order for the payment of such costs could be imposed under section 1203.1b if defendant were placed on probation or given a conditional sentence, as we have already explained, this provision does not apply to mandatory supervision.

Having found no other statutory authority for the urine testing fee, we must also strike this fee as unauthorized.

DISPOSITION

The judgment is modified to strike the imposition of orders requiring defendant to pay the probation supervision fee of $46 per month and the urinalysis testing fee of $25 per test. As modified, the judgment is affirmed. The clerk of the superior court is directed to correct the minutes and specific conditions of mandatory supervision to delete these fees, amend the abstract of judgment, and forward a certified copy of the amended abstract to the Sacramento County Jail.


                                                                                                             HOCH     , J.

We concur:


        BLEASE      , Acting P. J.


        MURRAY   , J.