Filed 10/26/20  P. v. Gezzer CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROBERT STEVEN GEZZER,<br><br>  Defendant and Appellant. | F076566<br><br>(Tulare Super. Ct. Nos. VCF340478, VCF294305)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on October 5, 2020, be modified as follows:

On page 17, at the end of the last sentence in the last full paragraph, add as footnote 19 the following:

> **19**   At least two opinions hold that the principle of retroactivity from *McKenzie* applies to the imposition of a split sentence.  (See *People v. Martinez* (2020) 54 Cal.App.5th 885, 893 [mandatory supervision is " 'akin to probation.' "]; *People v. Conatser* (2020) 53 Cal.App.5th 1223, 1229 [a split sentence is not a final judgment and a trial court's jurisdiction continues until the mandatory supervision period ends].)  We disagree with these decisions based on the reasons set forth in our analysis, and we decline to follow their holdings.

Appellant's petition for rehearing is denied.  Except for the modification set forth herein, the opinion previously filed remains unchanged.  The modification does not effect a change in the judgment.

Levy, J.

WE CONCUR:

Hill, P.J.

Detjen, J.

Filed 10/5/20  P. v. Gezzer CA5  (unmodified opinion)
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>ROBERT STEVEN GEZZER,<br><br>　　　　Defendant and Appellant. | F076566<br><br>(Super. Ct. Nos. VCF340478,<br>VCF294305)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Tia M. Coronado, Daniel B. Bernstein and Keith P. Sager, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## **INTRODUCTION**

On November 21, 2019, we filed our original opinion in this matter. We ruled that appellant Robert Steven Gezzer could not benefit from changes in the law that had occurred after he had received a split sentence in 2014. He had started to serve that sentence, and he did not appeal within 60 days. (*People v. Gezzer* (Nov. 21, 2019, F076566) [nonpub. opn.].)

On May 27, 2020, our Supreme Court transferred this matter back to this court with directions for us to vacate our decision and reconsider the cause in light of *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie I*).[1] The parties filed supplemental briefing with us regarding *McKenzie I* and its impact on our prior opinion.

On July 6, 2020, we vacated our prior opinion. After considering *McKenzie I*, we again determine that appellant does not benefit from the changes in law. We affirm.

## **BACKGROUND**

In March 2014, appellant was sentenced to prison for an aggregate term of six years following a plea of no contest to possession for sale of a controlled substance (Health & Saf. Code, § 11378). This sentence included a three-year enhancement for a prior narcotics conviction under Health and Safety Code section 11370.2, subdivision (c), and a one-year enhancement for a prior narcotics-related prison term under Penal Code section 667.5, subdivision (b).[2] The court ordered appellant to serve two years in county

---

[1]    In our prior opinion in this matter, we had cited and relied upon this court's decision in *People v. McKenzie* (2018) 25 Cal.App.5th 1207 (*McKenzie II*), which our high court affirmed in *McKenzie I*. (*McKenzie I*, *supra*, 9 Cal.5th at p. 52.) In the present opinion, we again cite *McKenzie II*, *supra*, 25 Cal.App.5th 1207. Throughout this opinion, *McKenzie I* will refer to the Supreme Court's decision and *McKenzie II* will refer to our decision from that same matter.

[2]    All future statutory references are to the Penal Code unless otherwise noted.

jail, and it suspended the remaining four years, during which time appellant was to serve mandatory supervision.[3]  Appellant began to serve his sentence.  He did not appeal.

In September 2017, appellant entered a plea of no contest to buying or receiving stolen vehicle equipment (§ 496d, subd. (a)).  He admitted that he was in violation of the terms and conditions of his mandatory supervision from his 2014 conviction.[4]

In November 2017, appellant was again sentenced.  The trial court revoked appellant's mandatory supervision from his 2014 conviction.  He was ordered to serve the remainder of his 2014 six-year term in county jail, which was deemed the base term.  For the 2017 conviction, the court imposed a one-third consecutive term of eight months.

In November 2017, appellant filed the present appeal.  While this appeal was pending, two bills were enacted.  The issue is whether appellant may benefit from these bills.

First, Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180) became effective on January 1, 2018.  (Stats. 2017, ch. 677, § 1.)  This reduced the number of sentencing enhancements under Health and Safety Code section 11370.2, subdivision (c).[5]  Under Senate Bill 180, a three-year enhancement may now be imposed only for a prior conviction for sales of narcotics involving a minor in violation of Health and Safety

---

[3]  The 2014 conviction occurred in Tulare County Superior Court case No. VCF294305.

[4]  The 2017 conviction occurred in Tulare County Superior Court case No. VCF340478.

[5]  Health and Safety Code section 11370.2, subdivision (c) now provides:  "Any person convicted of a violation of, or of a conspiracy to violate, [Health and Safety Code] Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of [Health and Safety Code] Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 … , a full, separate, and *consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, [Health and Safety Code] Section 11380*, whether or not the prior conviction resulted in a term of imprisonment."  (Italics added.)

3.

Code section 11380.**6**  It is undisputed that, following Senate Bill 180, appellant would not qualify for the three-year enhancement he received in 2014 under Health and Safety Code section 11370.2, subdivision (c).  The parties, however, disagree regarding whether appellant can receive the benefit of this change in law.

In addition to Senate Bill 180, another dispute exists regarding Senate Bill No. 136, which the Governor signed into law on October 8, 2019.  This amends section 667.5, subdivision (b), regarding prior prison term enhancements.  (Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136).)**7**  Senate Bill 136 went into effect on January 1, 2020.  (Stats. 2019, ch. 590, § 1.)

Under Senate Bill 136, a one-year prior prison term enhancement now only applies if a defendant has a prior conviction for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).  It is undisputed that, under Senate Bill 136, appellant would not qualify for the one-year enhancement he received in 2014 under section 667.5, subdivision (b).  The parties, however, disagree on whether he may benefit from Senate Bill 136.

On November 21, 2019, we filed our original opinion in this matter.  We concluded that, before Senate Bill 180 went into effect and before the Governor signed Senate Bill 136, appellant's 2014 judgment had already become final.  As such, and regardless of his 2017 sentencing, we held that he did not benefit from these changes in law.  (*People v. Gezzer*, *supra*, F076566.)

---

**6**    Health and Safety Code section 11380, subdivision (a), generally makes it a crime for a person 18 years of age or over to solicit, induce, encourage or intimidate a minor to violate certain drug-related statutes.

**7**    At times throughout this opinion we will refer to these bills collectively as Senate Bills 180 and 136.

4.

On May 27, 2020, our Supreme Court transferred this matter back to this court with directions for us to vacate our decision and reconsider the cause in light of *McKenzie I*, *supra*, 9 Cal.5th 40. We now reconsider this matter.

## DISCUSSION

Prior to addressing the parties' specific arguments, we provide an overview of the applicable legal concepts, and we summarize *McKenzie I*. We use a de novo standard of review to analyze the retroactive application of a statute. (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183.)

## I. The Retroactive Application Of A New Law Impacting Criminal Punishment.

Absent some indication to the contrary, courts presume that the Legislature intended amendments to apply retroactively when they reduce the punishment for a crime, at least in cases that are not yet final. (See *People v. Brown* (2012) 54 Cal.4th 314, 323–324; see *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).) Generally, when the amendment mitigates punishment and there is no saving clause, the rule from *Estrada* is that the amendment will operate retroactively so that the lighter punishment is imposed. (*Estrada*, *supra*, 63 Cal.2d at p. 748.) However, the amended statute must take effect before the judgment of conviction becomes final. (*Id.* at p. 744.)

*Estrada* involved statutory amendments that merely reduced penal sanctions for a given act. However, the *Estrada* rule also applies to amendments that entirely eliminate a penal sanction. (*People v. Rossi* (1976) 18 Cal.3d 295, 301 (*Rossi*); see also *McKenzie I*, *supra*, 9 Cal.5th at p. 45 [explaining *Rossi*'s extension of *Estrada*].) The rule from *Estrada* rests on an inference that, when the Legislature reduces the punishment for an offense, it has determined that the former penalty was too severe. (*Estrada*, *supra*, 63 Cal.2d at p. 745.) It is presumed that the Legislature must have intended for the new lighter penalty to apply to every case to which it constitutionally could apply. (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600.)

5.

## II. A Criminal Sentence Becomes Final If The Sentence Is Imposed And The Defendant Does Not Appeal Within 60 Days.

In a criminal case, the sentence is a declaration of punishment once a defendant's guilt has been determined. (*People v. Wilcox* (2013) 217 Cal.App.4th 618, 625.) A judgment is rendered when a trial court orally pronounces the sentence. (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) Once a criminal sentence is imposed, it will become a final judgment if the defendant does not appeal within 60 days. (*McKenzie II*, *supra*, 25 Cal.App.5th at p. 1214; *People v. Barboza* (2018) 21 Cal.App.5th 1315, 1318–1319; *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1420–1421; see also California Rules of Court, rule 8.308(a).)[8]

The timing of a criminal judgment, however, differs if probation is granted. A trial court may either grant probation by suspending *imposition* of sentence, or by imposing sentence and suspending its *execution*. (*People v. Segura* (2008) 44 Cal.4th 921, 932.) Our Supreme Court has noted that "neither forms of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment." (*People v. Chavez* (2018 ) 4 Cal.5th 771, 781.) When a trial court suspends imposition of sentence, it does not pronounce a judgment, and a defendant is placed on probation without a judgment pending against him or her. (*Ibid.*) In contrast, when a court suspends execution of sentence, a provisional or conditional judgment is imposed, and the finality of the sentence depends on the outcome of the probationary proceeding. (*Ibid.*)

When a trial court suspends imposition of sentence and places a defendant on probation, the probation order is considered a final judgment "only for the 'limited purpose of taking an appeal therefrom.' [Citation.]" (*People v. Howard* (1997) 16 Cal.4th 1081, 1087.) If a defendant violates probation, the trial court may revoke and

---

[8] All future references to rules are to the California Rules of Court unless otherwise noted.

terminate probation, and then impose sentence in its discretion, thereby rendering judgment. (§ 1203.2, subd. (c); *People v. Howard*, *supra*, at p. 1087.)

In contrast, if execution of sentence is suspended and a defendant is placed on probation, a subsequent revocation of that suspended execution brings the former judgment into full force and effect. (*People v. Howard*, *supra*, 16 Cal.4th at p. 1087.) If probation is revoked and the court had previously imposed a sentence, the sentencing judge must order that exact sentence into effect.[9] (*People v. Howard*, *supra*, 16 Cal.4th at p. 1088; see also § 1203.2, subd. (c).)

### III. The Imposition Of A Split Sentence.

Appellant received a split sentence in 2014, which is a sentencing option available for certain low-level felony offenders. A split sentence involves imposing the sentence and then "suspending execution of the concluding portion of [it]." (*People v. Borynack* (2015) 238 Cal.App.4th 958, 963; see also § 1170, subd. (h)(5)(A) & (B).) The suspended portion of the term is known as "mandatory supervision[.]" (§ 1170, subd. (h)(5)(B).) Under the split sentencing scheme, qualifying offenders will not serve their sentences in state prison but instead will "serve their sentences either entirely in county jail or partly in county jail and partly under the mandatory supervision of the county probation officer." (*People v. Scott* (2014) 58 Cal.4th 1415, 1418–1419.)

### IV. A Summary Of *McKenzie I, supra,* 9 Cal.5th 40.

We turn to *McKenzie I*, the opinion which our Supreme Court asked us to consider. The *McKenzie* defendant pleaded guilty in 2014 to drug-related charges in three cases. He admitted having sustained four prior felony drug-related convictions under Health and Safety Code, former section 11370.2, subdivision (c). The trial court suspended imposition of sentence, granted the defendant five years' probation in all three

---

[9] This is, however, subject to a possible recall under section 1170, subdivision (d), after a defendant has been committed to custody. (*People v. Howard*, *supra*, 16 Cal.4th at p. 1088.)

cases, and ordered him to attend drug court. (*McKenzie I*, *supra*, 9 Cal.5th at p. 43.) In 2016, the defendant admitted violating the terms of his probation. The trial court revoked probation, and it imposed a prison sentence that included four three-year prior drug conviction enhancements under Health and Safety Code, former section 11370.2, subdivision (c). (*McKenzie I*, *supra*, at p. 43.)

About two weeks later, the defendant filed a notice of appeal. In September 2017, this court modified the judgment in certain respects but otherwise affirmed. (*McKenzie I*, *supra*, 9 Cal.5th at p. 43.) The defendant appealed to the Supreme Court, which remanded the case back to this court with directions to reconsider that matter in light of Senate Bill 180, which had taken effect on January 1, 2018. (*McKenzie I*, *supra*, 9 Cal.5th at pp. 43–44.) On remand, this court (in *McKenzie II*) held that the defendant could take advantage of the revisions to Health and Safety Code section 11370.2, and we ordered those four enhancements stricken. (*McKenzie I*, *supra*, at p. 44.)

The high court affirmed our *McKenzie II* opinion. (*McKenzie I*, *supra*, 9 Cal.5th at p. 52.) Our Supreme Court reiterated that, when the Legislature repeals a criminal statute or otherwise eliminates conduct that was formerly deemed criminal, the pending criminal proceeding charging such conduct must be dismissed. This rule " ' "applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." ' " (*Id.* at p. 45, quoting *Rossi*, *supra*, 18 Cal.3d at p. 304.)

The *McKenzie I* court held that, when the revisions to Health and Safety Code section 11370.2 took effect, the defendant's criminal proceeding had not yet reached final disposition in the highest court authorized to review it.[10] As such, the defendant's prosecution had not been reduced to a final judgment. (*McKenzie I*, *supra*, 9 Cal.5th at

---

[10] This was the time for petitioning for a writ of certiorari in the United States Supreme Court. (*McKenzie I*, *supra*, 9 Cal.5th at p. 45.)

p. 45.)  The high court rejected the People's argument that, because section 1237, subdivision (a), deems an order granting probation to be a final judgment, then the defendant's 2014 order granting probation was a final judgment precluding retroactive application of the statutory revisions.  (*McKenzie I*, *supra*, at p. 46.)  To the contrary, our Supreme Court noted that a judgment and sentence are generally considered synonymous, and there is no judgment of conviction without a sentence.  (*McKenzie I*, *supra*, 9 Cal.5th at p. 46.)  According to the *McKenzie I* court, it could not be said that the defendant's criminal prosecution had concluded before the ameliorative legislation took effect.  (*Ibid.*)  The high court found it irrelevant that the defendant had not filed a notice of appeal within 60 days after being placed on probation.  Instead, a criminal action, and thus the trial court's jurisdiction to impose a final judgment, continues into and throughout a period of probation.  That jurisdiction expires only when the probation period ends.  (*Id.* at p. 47.)  Moreover, "a criminal proceeding ends only once probation ends if no judgment has issued in the case."  (*Ibid.*)  The Supreme Court determined that the People had offered no basis to conclude that the revisions to Health and Safety Code section 11370.2 could not be applied constitutionally to the defendant.  (*McKenzie I*, *supra*, at p. 48.)

The Supreme Court was also not persuaded by the People's argument that probationers who do not file a timely appeal from an order granting probation cannot later challenge the order or the underlying determination of guilt.  (*McKenzie I*, *supra*, 9 Cal.5th at p. 50.)  This argument is based on the principle that, when a court suspends imposition of sentence and grants probation, the defendant's failure to appeal from the order granting probation generally " 'estops' the defendant 'from claiming error *with respect to matters occurring before that order*,' but not as to 'proceedings in connection with the revocation of probation and sentencing.'  [Citation.]  In other words, it 'merely forecloses action based on errors committed at the trial.'  [Citation.]"  (*McKenzie I*, *supra*, 9 Cal.5th at p. 50.)  The *McKenzie I* court noted that the defendant was not raising

an alleged trial error but, instead, raising an issue relating to the subsequent revocation of probation and sentencing based on an event (the amendment of Health and Safety Code section 11370.2) that occurred long after the court ordered probation and the time for direct appeal had lapsed. (*McKenzie I*, *supra*, at p. 50.) The high court stated that the defendant could not have raised this issue during a direct appeal from the probation order, and, under the circumstances, his "failure to file such a direct appeal does not preclude him from taking advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his probation and imposition of sentence." (*Ibid.*) For all of these reasons, the Supreme Court affirmed this court's opinion in *McKenzie II*. (*McKenzie I*, *supra*, at p. 52.)

**V.  *McKenzie I* Does Not Alter Our Conclusion That Appellant Does Not Benefit From Either Senate Bill 180 Or Senate Bill 136 Because His 2014 Conviction Became A Final Judgment 60 Days Later.**

In our prior opinion we concluded that, before Senate Bill 180 went into effect and before the Governor signed Senate Bill 136, appellant's 2014 judgment had already become final. We reached this conclusion because appellant had been sentenced in 2014 and he did not appeal within 60 days. As such, and regardless of his 2017 sentencing, we held that he did not benefit from these changes in law. (*People v. Gezzer*, *supra*, F076566.)

In his supplemental briefing following remand, appellant takes the position that our Supreme Court has rejected our prior reasoning. He notes that *McKenzie I* did not distinguish between the imposition of a probationary sentence versus the suspension of such a sentence. Further, appellant argues that he could not have filed a notice of appeal in 2014 regarding Senate Bills 180 and 136 because they were not enacted until years later. Finally, he asserts that his failure to file an appeal in 2014 does not preclude the rule from *Estrada*. Applying the reasoning of *McKenzie I*, he maintains that he was on

10.

probation (i.e., mandatory supervision) when he was resentenced in 2017, and his criminal proceeding is still under appellate review.

We reject appellant's renewed arguments, and we agree with respondent that *McKenzie I* does not alter the disposition from our prior opinion.

## A. *McKenzie I* does not alter our prior disposition.

As an initial matter, *McKenzie I* did not consider a split sentence, and it is well established that cases are not authority for propositions not considered. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.) Further, although it did not focus on the distinctions between suspending *imposition* of a criminal sentence versus suspending *execution* of it, *McKenzie I* nevertheless confirms that a judgment and sentence are generally considered synonymous, and there is no judgment without a sentence. (*McKenzie I*, *supra*, 9 Cal.5th at p. 46.) According to *McKenzie I*, the cutoff point for application of ameliorative amendments is the date when the case or prosecution is reduced to a final judgment. (*Ibid*.) A criminal action, and thus the trial court's jurisdiction to impose a final judgment, continues into and throughout a period of probation. That jurisdiction expires when the probation period ends. (*Id.* at p. 47.) However, that rule applies "if no judgment has issued in the case." (*Ibid.*)

Appellant's circumstances are in stark contrast with those of the *McKenzie* defendant. Appellant had a criminal sentence imposed against him in 2014. It cannot be said that he received a conditional or provisional judgment, such as when a trial court suspends execution of sentence and places a defendant on probation. In that situation, the finality of the sentence depends on the outcome of the probationary proceeding. (*People v. Chavez*, *supra*, 4 Cal.5th at p. 781.) To the contrary, the court did not suspend execution of appellant's 2014 sentence. He began to serve his sentence in custody and he did not appeal within 60 days. Thus, and unlike the *McKenzie* defendant who was placed on probation without the imposition of sentence, appellant's judgment became final in

11.

2014 after his time to appeal expired. (See *McKenzie II*, *supra*, 25 Cal.App.5th at p. 1214; *People v. Barboza*, *supra*, 21 Cal.App.5th at p. 1319; *People v. Ramirez*, *supra*, 159 Cal.App.4th at p. 1421; see also rule 8.308(a).) His 2014 judgment was final long before Senate Bill 180 went into effect and long before the Governor signed Senate Bill 136. *McKenzie I* is distinguishable, and it cannot be read as extending *Estrada*'s rule of retroactivity to appellant under these circumstances.[11]

### B.     Appellant's additional arguments are without merit.

Prior to the remand in this matter, appellant had asserted that a split sentence "more closely resembles" a defendant being placed on probation with imposition of sentence suspended. He had noted that section 1170, subdivision (h)(5)(A), directs a court to "suspend" the period of mandatory supervision when a split sentence is imposed. He had further noted that section 1170, subdivision (h)(5)(B), provides a trial court with authority to terminate early a period of mandatory supervision.

In his supplemental briefing after remand in this matter, appellant renews these arguments. He asserts that he should be entitled to the benefit of the retroactive application of Senate Bills 180 and 136 whether he was placed on probation or given a split sentence. He argues it is sufficient that he was still serving the 2014 split sentence when he was resentenced in 2017 following his new conviction. However, he contends that, should this court continue to distinguish between suspension and execution of

---

[11]     In our original opinion, we had relied, in part, on *People v. Grzymski* (2018) 28 Cal.App.5th 799, review granted February 13, 2019, S252911 (*Grzymski*), in affirming appellant's judgment. *Grzymski* had held that the failure to appeal a split sentence results in a final judgment, which precludes retroactive application of Senate Bill 180. (*Grzymski*, *supra*, 28 Cal.App.5th at p. 802, review granted.) On May 27, 2020, however, our Supreme Court remanded *Grzymski* to the First District Court of Appeal, Division One, with directions to vacate its decision and to reconsider the cause in light of *McKenzie I*. Because the Supreme Court ordered *Grzymski* to be vacated and reconsidered, we no longer rely on that opinion.

12.

probationary sentences, then we should hold that his split sentence more closely resembles a grant of probation with imposition of sentence suspended.[12]

We continue to reject appellant's position. Section 1170, subdivision (h)(5), provides in relevant part that, unless a sentencing court finds it inappropriate, the court "shall suspend execution of a *concluding portion* of the term for a period selected at the court's discretion." (§ 1170, subd. (h)(5)(A), italics added.) The suspended portion of a defendant's term "shall be known as mandatory supervision, and, unless otherwise ordered by the court, *shall commence upon release from physical custody or an alternative custody program*, whichever is later." (*Id.* at subd. (h)(5)(B), italics added.) The statute states that "[t]he period of supervision shall be mandatory, and may not be earlier terminated except by court order." (*Ibid.*)

Here, appellant's 2014 sentence was never suspended. After sentence was imposed, he began to serve his time in jail. Only after being released from physical custody did appellant start mandatory supervision. If anything, mandatory supervision appears more like parole and less like probation.[13] Indeed, section 1170, subdivision (h), is an option only if probation has been denied. (*People v. Fandinola*, *supra*, 221 Cal.App.4th at p. 1422; see also *People v. Cruz* (2012) 207 Cal.App.4th 664, 671 [once probation has been denied, eligible felons will serve imprisonment in local custody rather than state prison].) As such, and contrary to appellant's assertions, a split sentence is not analogous to suspending imposition of sentence and placing a defendant on probation.

---

**12** In his supplemental brief following remand, appellant acknowledges that this court rejected his argument in its prior opinion. He makes it again to preserve it for review with our Supreme Court.

**13** See *People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1423 [noting that "the Legislature appears to indicate its view that mandatory supervision is more similar to parole than probation"]; accord *People v. Martinez* (2014) 226 Cal.App.4th 759, 763; but see *People v. Griffis* (2013) 212 Cal.App.4th 956, 963, fn. 2 [commenting in a footnote that mandatory supervision is "akin to probation"].

Likewise, we continue to reject appellant's assertion that his 2014 judgment was revived in 2017 when he was resentenced following his new conviction.[14] He previously cited *People v. Phoenix* (2014) 231 Cal.App.4th 1119 (*Phoenix*) and *People v. Saibu* (2011) 191 Cal.App.4th 1005 (*Saibu*). These opinions do not establish that appellant should receive retroactive benefit from Senate Bill 180 or Senate Bill 136. In addition, nothing from *McKenzie I* alters our prior conclusion in this regard.

In *Phoenix*, the defendant was convicted of crimes in two counties. (*Phoenix*, *supra*, 231 Cal.App.4th at p. 1121.) A trial court in the second county refused to calculate custody credits from the other county's case. (*Id.* at p. 1122.) On appeal, the *Phoenix* court concluded that the second trial court became the "sentencing court" for both cases. (*Id.* at p. 1126.) The sentence from the other county was "replaced by the consecutive sentence imposed" by the second trial court. (*Ibid.*) Thus, it was the second court's duty to calculate and award the defendant with all of his custody credits, including those pertaining to the case in the other county. (*Ibid.*)

In *Saibu*, a defendant's abstract of judgment had to be corrected because he had served a portion of his sentence in one case before the trial court sentenced him to a single aggregate term in two other cases. The defendant should have been credited for all of his custody time. (*Saibu*, *supra*, 191 Cal.App.4th at pp. 1012–1013.) *Saibu* held that, when a trial court resentences a defendant to a single aggregate term pursuant to rule 4.452, the court has "modified" the original sentence so that custody credits must be credited pursuant to section 2900.1.[15] (*Saibu*, *supra*, 191 Cal.App.4th at p. 1012.)

---

**14**    In his supplemental brief following remand, appellant renews this argument, but he acknowledges that we previously rejected his contentions. He states that he is preserving this issue for "future appellate proceedings."

**15**    Section 2900.1 states: "Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited

14.

Neither *Phoenix* nor *Saibu* assist appellant.  When a defendant violates probation, a trial court may revoke and terminate probation, but it must order execution of the *originally imposed sentence* if imposition of sentence was not suspended.  (§ 1203.2, subd. (c); *People v. Howard*, *supra*, 16 Cal.4th at pp. 1087–1088.)  When appellant violated the terms of his mandatory supervision, the 2017 sentencing court simply consolidated the 2014 sentence with his new additional sentence.  The 2017 court revoked and terminated mandatory supervision, and it ordered execution of the originally imposed 2014 sentence (which was six years in custody).  Although the 2017 court may have become the "sentencing court" for both cases, it merely followed the required procedure under sections 669[16] and 1170.1,[17] and rule 4.452.  Nothing reasonably suggests that this procedure was intended to impact the retroactive application of new criminal laws.  Indeed, under rule 4.452, a sentencing court must impose "a single aggregate term" as defined in section 1170.1, subdivision (a), when a determinate sentence is imposed consecutive to one or more determinate sentences previously imposed in the same court or in other courts.  The sentences on all such counts are combined "as though they were all counts in the current case."  (Rule 4.452(a)(1).)  In the combined case, the judge must make a new determination regarding which count represents the principal term.  (Rule 4.452(a)(2).)  The current sentencing court, however,

upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."

[16]     Section 669, subdivision (a), directs a sentencing court to declare whether a second judgment shall run concurrently or consecutively when a person is convicted of multiple crimes, whether in the same proceeding or in different proceedings or courts.

[17]     Under section 1170.1, subdivision (a), when a defendant is convicted of two or more felonies (whether in the same proceeding or from a different proceeding or court) and a consecutive term of imprisonment is imposed, the aggregate term of imprisonment is the sum of the principal term, the subordinate term, and any additional terms imposed for applicable enhancements.

*may not change any discretionary decisions* imposed by the previous judge. (Rule 4.452(a)(3).)

Neither *McKenzie I*, *Phoenix* nor *Saibu* analyzed whether resentencing a defendant and imposing an aggregate sentence pursuant to rule 4.452 impacts a prior final judgment. Cases are not authority for propositions not considered or decided. (*Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1134.) None of these decisions stands for the proposition that retroactive application should be extended when a defendant is resentenced to an aggregate prison term involving convictions from more than one matter. These opinions do not establish that appellant should receive benefit of Senate Bill 180 or Senate Bill 136.

Finally, we previously rejected appellant's assertion that we should strike these enhancements even if his 2014 judgment became final. In his prior briefing, appellant had quoted the following statement from *In re Chavez* (2004) 114 Cal.App.4th 989: "There is nothing in *Estrada* that prohibits the application of revised sentencing provisions to persons whose sentences have become final if that is what the Legislature intended or what the Constitution requires." (*Id.* at p. 1000.) *In re Chavez* does not assist appellant.

In *In re Chavez*, the Legislature amended the sentencing scheme for tax fraud. These legislative amendments were described as a "cleanup bill" needed " 'to correct technical and grammatical errors in penal provisions in various codes.' " (*In re Chavez*, *supra*, 114 Cal.App.4th at p. 995.) The Legislature intended these amendments to correct statutory language to ensure conformity to the determinate sentencing scheme. (*Id.* at p. 998.) The *In re Chavez* court determined that, under these circumstances, the Legislature's amendments should apply retroactively even to final judgments. (*Id.* at pp. 999–1000.) According to the appellate court, the Legislature had the power to adjust prison sentences, and even a final judgment could be adjusted "for a legitimate public purpose." (*Id.* at p. 1000.)

16.

The unique circumstances found in *In re Chavez* are lacking in this matter. Nothing reasonably suggests that the Legislature intended for Senate Bill 180 or Senate Bill 136 to have the far changing ramifications that appellant now advances.[18] Nothing suggests that these bills were intended to fix numerous prior technical and grammatical mistakes. Nothing suggests these bills were intended to impact final judgments. To the contrary, if the Legislature had held such an intent, it would have either made such a pronouncement or provided a mechanism for qualified convicts to seek relief. *In re Chavez* is distinguishable and does not establish retroactive application of Senate Bill 180 or Senate Bill 136 to appellant's final judgment from 2014.

Based on this record, appellant may not benefit from either Senate Bill 180 or Senate Bill 136. He was sentenced in 2014, he began to serve that sentence, and he did not file an appeal within 60 days. As such, that judgment became final before these changes in law occurred. *McKenzie I* does not alter the disposition from our prior opinion. Accordingly, appellant's arguments are without merit, and this claim fails.

---

[18] The June 28, 2017, Assembly Floor Analysis for Senate Bill 180 made the following comments. It noted that sentencing enhancements do not prevent or reduce drug sales, but they do destabilize families and communities. " 'The current policy of sentencing people with nonviolent convictions to long periods of incarceration is an expensive failure that does not reduce the availability of drugs in our communities.' " (Assem. Com. on Public Safety, Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 180 (2017–2018) as introduced Jan. 24, 2017, p. 2.)

The September 13, 2019, Senate Floor Analysis for Senate Bill 136 noted that the one-year enhancement under section 667.5, subdivision (b), "re-punishes people for previous jail or prison time served instead of the actual crime when convicted of a non-violent felony." This enhancement "exacerbates existing racial and socio-economic disparities in our criminal justice system." It is projected that repealing this enhancement "will save California tax payers tens of millions [of] dollars each year." (Sen. Com. on Public Safety, Off. of Sen. Floor Analyses, Sen. Bill No. 136 (2019–2020), pp. 2–3.)

## VI. Appellant's Equal Protection Challenge Is Without Merit.

Appellant previously raised an equal protection challenge. He renews this claim in his supplemental briefing following remand. We continue to disagree that a constitutional violation occurred.

A criminal defendant has no vested interest in a specific term of imprisonment. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) "It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard. [Citation.] Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail. [Citation.] Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law. [Citation.]" (*Id*. at p. 74.)

Equal protection of the law is denied only if no rational relationship exists between the disparity of treatment and some legitimate governmental purpose. (*People v. Turnage*, *supra*, 55 Cal.4th at p. 74.) The legislation in question will survive scrutiny if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Ibid.*) To make a successful rational basis challenge, a party must negate every conceivable basis that might support the disputed statutory disparity. If a plausible basis exists for the disparity, appellate courts may not second-guess its wisdom, fairness, or logic. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

Our Supreme Court has recognized that the Legislature has a rational reason for refusing to make new laws that reduce criminal sentences fully retroactive—namely, "to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546.) Consequently, " '[a] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 189.)

Under the Supreme Court authorities above, appellant's equal protection challenge is without merit. He has failed to negate every conceivable basis that might support the disputed statutory disparity. (See *Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 881.) Accordingly, he does not establish a constitutional violation, and this claim fails.

## **DISPOSITION**

The judgment is affirmed.

LEVY, J.

WE CONCUR:


HILL, P.J.


DETJEN, J.

19.