# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
CLYDELL BRYANT,
Defendant and Appellant.

S259956

Second Appellate District, Division One
B271300

Los Angeles County Superior Court
GA094777

July 29, 2021

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Liu, Cuéllar, Kruger, Groban, and Jenkins concurred.

Chief Justice Cantil-Sakauye filed a concurring opinion.

PEOPLE v. BRYANT

S259956


Opinion of the Court by Corrigan, J.


The 2011 Realignment Act (Stats. 2011, ch. 15, § 1; Realignment Act or Act) provides for a period of mandatory supervision following service of a county jail sentence for eligible defendants. Here we consider how to assess the validity of a challenged condition of such a release. We conclude that such discretionary conditions are to be evaluated for reasonableness on a case-by-case basis under the test set out in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). Accordingly, we affirm the judgment of the Court of Appeal.

## I. BACKGROUND

Late on August 24, 2014, police officers responded to a disturbing the peace call outside a housing complex. The officers arrived to find a number of people gathered around two cars in the parking lot. Clydell Bryant and his girlfriend, Lamaine Jones, were smoking marijuana in the car of Jones's mother. A search of the vehicle revealed a loaded, semi-automatic handgun under the seat Bryant had occupied. The gun was not registered and bore DNA matching that of Bryant.

Bryant was convicted of carrying a concealed firearm in a vehicle, along with related findings. (Pen. Code,[1] § 25400, subds. (a)(1) & (c)(6).) The court imposed a split sentence

_____

[1] All further undesignated statutory references are to the Penal Code.

(§ 1170, subd. (h)(5)), calling for two years in the county jail, with the last 364 days to be served at large on mandatory supervision. Over Bryant's objection, the court imposed the following condition: "Defendant is to submit to search of any electronic device either in his possession[,] including cell phone[,] and/or any device in his place of residence. Any search by probation is limited to defendant[']s text messages, emails, and photos on such devices." (Capitalization omitted.)

Bryant challenged the search condition as unreasonable under the *Lent* test. (*Lent, supra*, 15 Cal.3d 481.) After the Court of Appeal agreed and struck the condition (*People v. Bryant* (2017) 10 Cal.App.5th 396, 406 (*Bryant I*)), we granted the People's petition for review (*Bryant I*, S241937; rev. granted June 28, 2017) and held the case pending our decision in *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*). We subsequently directed the Court of Appeal to vacate its decision and reconsider the issue in light of *Ricardo P.* The Court of Appeal again struck the search condition as unreasonable (*People v. Bryant* (2019) 42 Cal.App.5th 839, 848, 850 (*Bryant II*)), and again we granted review.

## II. DISCUSSION

California employs a multi-level approach to the classification of crimes and their punishment, denoting offenses as felonies, misdemeanors, and infractions. (§ 16.) Very generally, and subject to specific legislative provisions, before the Realignment Act, felonies were punishable by death or imprisonment in the state prison. Misdemeanors were subject to a county jail sentence and infractions could not result in confinement. (See *Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 765 [summarizing former law].) Some offenses could be

2

punished as either felonies or misdemeanors. (See *People v. Park* (2013) 56 Cal.4th 782, 789.)[2] Both before and after Realignment, except as prohibited by statute, a person convicted of a felony may be placed on probation with imposition or execution of a state prison sentence suspended, and be made subject to a variety of conditions, including a county jail sentence. (See generally §§ 1203.1, subds. (a), (j), 1203.02, 1203.097, 1203.1ab, 1203.1g.) A person sentenced to state prison may be released on parole, which may also entail conditions that are required by statute or imposed at the discretion of the Board of Parole Hearings. (See generally §§ 3053–3053.8, 3067, subd. (b)(3).)

The Realignment Act significantly revamped California's penal system by creating two new categories of postrelease supervision: mandatory supervision upon release from jail and postrelease community supervision (PRCS) following service of a prison term. The Act shifts responsibility for the incarceration, rehabilitation, and postrelease supervision of some felons from the state prison system to local jails and probation departments. (Stats. 2011, ch. 15, § 450; § 1170, subd. (h)(1), (2), (5)(A) & (B); *Wofford v. Superior Court* (2014) 230 Cal.App.4th 1023, 1032.) For eligible felony offenders, the trial court must generally impose a split local sentence with execution of a portion of the term suspended and the defendant released from jail under terms of "mandatory supervision." (§ 1170, subd. (h)(5)(B); see also *id.*, subd. (h)(5)(A).) Significantly, the court need not suspend part of the incarceration term if it finds that, in the interest of justice, such

---

[2]     Payment of fines or fees may also be imposed following a conviction. We do not discuss that aspect of sentencing here.

suspension is not appropriate. (*Id.*, subd. (h)(5)(A).) While on mandatory supervision, the offender is supervised by the probation department "in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation . . . ." (*Id.*, subd. (h)(5)(B).) The Postrelease Community Supervision Act of 2011 (Stats. 2011, ch. 15, § 479) created PRCS as an alternative to parole for nonserious, nonviolent felonies. Qualifying offenders serving a felony prison sentence are to be released to the supervision of a county agency rather than the state's Department of Corrections and Rehabilitation. (§§ 3450–3451; *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399.) Both mandatory supervision and PRCS are new categories of supervision distinct from both probation and parole. Their distinct status gives rise to the question here.

The Realignment Act does not speak directly to how the validity of mandatory supervision conditions are to be assessed. To resolve defendant's challenge the Court of Appeal looked to the *Lent* test, which historically governed conditions of probation. (*Bryant II*, *supra*, 42 Cal.App.5th at pp. 843–844, 849.) Applying *Lent* and *Ricardo P.*, the latter of which involved an electronics search condition of juvenile probation, the Court of Appeal invalidated Bryant's search condition imposed in the context of mandatory supervision. (*Bryant II*, at pp. 843–850.) We conclude that *Lent*'s case-by-case analysis for reasonableness should be employed in this new context. A review of the statutory provisions governing mandatory supervision reveals a scheme similar to that governing probationers with respect to the conditions of release. The balance of interests between effective supervision and an

individual's privacy concerns does not substantially differ between probation and mandatory supervision settings.[3]

### A. Standards Governing Probation Conditions

Section 1203.1, subdivision (j) authorizes the trial court to impose conditions of probation to achieve a variety of goals, including reforming and rehabilitating the probationer and protecting public safety. In order to effectuate the requirement that probation conditions be "reasonable" (*ibid.*), *Lent* articulated a now-familiar three part test: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*Lent, supra*, 15 Cal.3d at p. 486, quoting *People v. Dominguez* (1967) 256 Cal.App.2d 623, 627.) *Lent* contemplates a case-by-case assessment taking into account the relationship between the offender's crime, the terms of the challenged condition, and its relation to the probationer's future criminality. A condition will not be invalidated as unreasonable unless all three of *Lent*'s criteria are satisfied. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

---

[3] This case does not involve the Legislature's authority to statutorily mandate general conditions of supervision, as it has done for probationers (see, e.g., §§ 1203.02, 1203.097, 1203.1ab, 1203.1g, 1203.1j), parolees (see, e.g. §§ 3053.2–3053.8, 3067, subd. (b)(3)), and persons on PRCS (see, e.g., § 3453, subds. (b)–(t)). Those statutory provisions are subject to constitutional scrutiny. (See *In re Taylor* (2015) 60 Cal.4th 1019, 1035–1036; *In re E.J.* (2010) 47 Cal.4th 1258, 1264–1265, 1282–1283 & fn. 10.) By contrast, the Legislature did not mandate *any* generally required provisions for release on mandatory supervision, leaving those determinations to trial court discretion.

The trial court has broad discretion to fashion conditions of probation (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120), and we review an imposed condition for abuse of discretion (*People v. Moran* (2016) 1 Cal.5th 398, 403). "[A] reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable." (*Ibid*.)

We applied the *Lent* test to an electronics search provision imposed as a condition of juvenile probation in *Ricardo P.*, *supra*, 7 Cal.5th 1113. There, the minor had been declared a ward of the court for committing two residential burglaries. He challenged a probation condition requiring that he submit to a warrantless search of his electronic devices and provide passwords for accounts accessible through them. (*Id*. at pp. 1116–1117.) It was uncontested that the condition was unrelated to the burglaries and did not involve otherwise criminal conduct. (*Id*. at p. 1119.) Focusing on *Lent*'s third prong, we concluded that the condition was not reasonably related to future criminality because there was "no indication that Ricardo had used or will use electronic devices in connection with drugs or any illegal activity." (*Id*. at p. 1116.) Thus, the condition failed under *Lent*.

*Ricardo P.* explained that the test of reasonableness involves a balancing of factors. "*Lent*'s third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.) Specifically, a probation condition cannot be justified solely on the basis that it enhances the effective supervision of the probationer without regard for the burden it places on the probationer. (*Id*. at pp.

1122, 1125.) Rather, the "requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality" between the burden imposed by the condition and the legitimate interests the condition serves. (*Id.* at p. 1122.) We concluded that "[s]uch proportionality [was] lacking" based on the record. (*Ibid.*) Ricardo P.'s electronics search condition "impose[d] a very heavy burden on privacy with a very limited justification." (*Id.* at p. 1124.) "[N]othing in the record suggest[ed] that Ricardo ha[d] ever used an electronic device or social media in connection with criminal conduct." (*Id.* at p. 1122.) Because the burden imposed on Ricardo's privacy was "substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society" (*id.* at p. 1119), and because the first two *Lent* criteria were also satisfied, the condition was held invalid (*id.* at p. 1124). We cautioned, however, that "[o]ur holding does not categorically invalidate electronics search conditions. In certain cases, the [defendant's] offense or personal history may provide the . . . court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the [defendant] from future criminality." (*Id.* at pp. 1128–1129.)

### B. *Standards Governing Conditions of Mandatory Supervision*

In determining how conditions of the new mandatory supervision status are to be assessed, we begin with the statutory language. (*People v. Sinohui* (2002) 28 Cal.4th 205, 211.) The Realignment Act defined " 'mandatory supervision,' " as "the portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to" section 1170, subdivision (h)(5)(B). (§ 19.9.) A split

sentence of local jail time followed by a period of mandatory supervision is a hybrid sentence, distinct from both probation and parole. An earlier version of the Act provided for a split sentence comprised of "a period of county jail time and a period of mandatory *probation*." (Stats. 2011, ch. 39, § 27, italics added.) But the designation of probation was replaced with a reference to "mandatory" supervision "by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation." (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 12.) A subsequent amendment clarified that "[t]he portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision" and it specifically defined the term " 'mandatory supervision' " in section 19.9. (Stats. 2012, ch. 43, §§ 14, 27.) This legislative history "suggests that the Legislature did not intend probation and mandatory supervision to be interchangeable or otherwise identical in all respects." (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 766 (*Ghebretensae*).)

Nonetheless, the conditions of mandatory supervision resemble those of probation in that they are ordered by a judge at the time of sentencing and involve an individualized exercise of discretion based on the particular case.[4] Notably, unlike

---

[4] See section 1170.3, subdivision (a)(6) (directing the Judicial Council to adopt guidelines for a trial court's decision to, among other things, "determine the appropriate period and conditions of mandatory supervision"); California Rules of Court, rule 4.415(c) (establishing factors to be considered when a trial court imposes conditions of mandatory supervision);

other forms of supervision, the Legislature did not mandate *any* generally required provisions for release on mandatory supervision. *Lent*'s case-specific evaluation is particularly appropriate to review of a trial court's order with regard to a given defendant on mandatory supervision. Its test supplies a framework for assessing whether conditions of supervision for that defendant are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the [defendant]." (§ 1203.1, subd. (j).)

The Realignment Act also provides that "the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court." (§ 1170, subd. (h)(5)(B).) Focusing on the language "shall be supervised" (*ibid*.), some appellate courts have interpreted this provision to apply to "the county probation officer's supervision, not the trial court's authority" (*People v. Rahbari* (2014) 232 Cal.App.4th 185, 195 (*Rahbari*); accord, *Ghebretensae*, *supra*, 222 Cal.App.4th at p. 764). They reason that the provision "pertains to the *nature and manner of supervision by the probation officer over the defendant* — in other words, the nature and manner of the supervision itself." (*Ghebretensae*, at p. 764; accord,

_____

Couzens & Bigelow, Felony Sentencing After Realignment (May 2017) at page 17 <https://www.courts.ca.gov/partners/documents/felony_sentencing.pdf>[as of July 29, 2021]. All Internet citations in this opinion are archived by year, docket number and case number at <http://www.courts.ca.gov/38324.htm>.

*Rahbari*, at p. 195.) The People advance a similar argument here. We do not read the statutory language so narrowly. The manner of supervision necessarily depends on the scope or substance of the terms and conditions imposed. In that sense it is the terms and conditions of release that define what is being supervised and how supervision will be conducted. Accordingly, this statutory language further supports the conclusion that the terms and conditions of mandatory supervision, like those of probation, are subject to the *Lent* test.[5]

The Legislature also amended several statutes dealing with probation to incorporate persons on mandatory supervision. (See, e.g., §§ 1203.3, as amended by Stats. 2012, ch. 43, § 31 [modification of terms and conditions], 1203.2, as amended by Stats. 2012, ch. 43, § 30 [revocation]; see also *Rahbari*, *supra*, 232 Cal.App.4th at p. 193.) These amendments suggest that, in general, the conditions of probation and mandatory supervision are now intended to be handled in the same way.[6]

Additional support appears in the Legislature's codified findings and declarations accompanying the Realignment Act.

---

[5] We disapprove of language in *People v. Rahbari*, *supra,* 232 Cal.App.4th at page 195 and *People v. Ghebretensae*, *supra*, 222 Cal.App.4th at page 764 to the extent it conflicts with this opinion.

[6] Of course, every general rule is subject to exceptions. For example, *Rahbari*, *supra*, 232 Cal.App.4th at pages 193–194 held that victim restitution orders for persons on mandatory supervision are limited to losses caused by the criminal conduct for which the defendant was convicted (§ 1202.4), not the broader provisions for restitution governing persons on probation (§ 1203.1). We need not consider these nuances in resolving the narrow issue here.

(See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925.) These findings and declarations explain that mandatory supervision was designed to apply to low-level felony offenders who are specifically permitted to avoid prison and instead be incarcerated in the county jail. Section 17.5 of the Penal Code, enacted as part of the Act (Stats. 2011, ch. 15, § 229), reflects an intent to reduce recidivism and improve public safety by creating a tiered system of incarceration and release (§ 17.5, subd. (a)(1)–(5)). Under the statutory amendments, "[p]arole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes. (§ 3451, subd. (b).) All other . . . persons [released from prison] are placed on [PRCS]. (§ 3451, subd. (a).)" (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434.) Those subject to a split term of incarceration in county jail followed by mandatory supervision are considered lower level offenders compared with those on parole or PRCS. The Legislature specifically concluded that these offenders do not warrant incarceration in state prison. (§§ 17.5, 1170, subd. (h)(1).) Instead, they more closely resemble probationers for purposes of assessing the conditions of supervision required for their successful rehabilitation and societal reintegration.

## C. *The People's Counterarguments*

The People counter that the status of mandatory supervision justifies an electronics search clause for all those so released. Thus, they argue a case-by-case review under *Lent* is inappropriate. They urge that these individuals have been found unsuitable for probation. Like parolees, they are sentenced to a period of incarceration and are deemed to be under continued custody during the supervisory period. The

People's analogy to parolees in this context is misplaced. It fails to acknowledge that mandatory supervision is a new status, reserved for those considered inappropriate for a state prison commitment before parole release.

It is true that courts have noted the similarities between mandatory supervision and parole for some purposes. (See, e.g., *People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1422–1423 (*Fandinola*); *People v. Martinez* (2014) 226 Cal.App.4th 759, 762–763 (*Martinez*).) *Fandinola*, for example, considered whether a person on mandatory supervision should pay a probation supervision fee under former section 1203.1b, which "unambiguously applie[d] to cases 'in which a defendant is granted probation or given a conditional sentence.'" (*Fandinola*, at p. 1422, quoting former § 1203.1b, subd. (a).) The court declined to extend the probation fee to the new status of mandatory supervision. It observed that "a county jail commitment followed by mandatory supervision imposed under section 1170, subdivision (h), is akin to a state prison commitment; it is not a grant of probation or a conditional sentence." (*Fandinola*, at p. 1422.)[7] The provisions of section 667.5, subd. (d) governing enhancements for prior prison terms offer another example. That section provides, "[T]he defendant shall be deemed to remain in prison custody for an offense until the official discharge from custody, including any period of mandatory supervision, or until release on parole or postrelease community supervision . . . ." And the Legislature expressly

---

[7] The Legislature has since amended section 1203.1b, subdivision (a) to provide that offenders placed on mandatory supervision may be ordered to pay costs to the probation department. (Stats. 2014, ch. 468, § 1.)

amended the statute governing parole revocation fines to include mandatory supervision revocation fines. (§ 1202.45, subd. (b), as amended by Stats. 2012, ch. 762, § 1.)

But the fact that mandatory supervision tracks parole for some purposes does not mean that it does so for all purposes. *Fandinola* dealt with the imposition of costs that are now directly regulated by statute. Statutes regulating fines and enhancements for prior prison terms do not involve conditions of release. Nor do they speak to the degree of risk or potential for recidivism posed by people on mandatory supervision. Those questions are more squarely addressed by the Legislative findings and declarations accompanying the Realignment Act and the express provisions of section 1170, subdivision (h)(1). As discussed above, those provisions reflect the Legislature's determination that defendants eligible for mandatory supervision are lower-level offenders who do not warrant a state prison commitment. (§§ 17.5, 1170, subd. (h)(1).)

The Court of Appeal in *Martinez, supra*, 226 Cal.App.4th 759 reached the opposite conclusion that "the validity of the terms of supervised release [are to be analyzed] under standards analogous to the conditions or parallel to those applied to terms of parole." (*Id*. at p. 763.) In doing so, it cited *Fandinola* for the proposition that " 'the Legislature has decided a county jail commitment followed by mandatory supervision . . . , is akin to a state prison commitment; it is not a grant of probation or a conditional sentence.' " (*Ibid.*, quoting *Fandinola, supra*, 221 Cal.App.4th at p. 1422.) As noted, *Fandinola* drew parallels between mandatory supervision and parole in a different context. *Martinez* did not discuss the provisions of section 17.5, which squarely address legislative intent. Even so, *Martinez* ultimately applied the *Lent* test to assess the challenge to a

mandatory supervision condition under the theory that "[t]he validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions." (*Martinez*, at p. 764.) We likewise employ the *Lent* test, but for different reasons. We disapprove of language in *People v. Martinez, supra*, 226 Cal.App.4th at page 763 to the extent it conflicts with this opinion.

The People rely heavily on *People v. Burgener* (1986) 41 Cal.3d 505 (*Burgener*), which held that "a warrantless search condition is a reasonable term in any *parole* of a convicted felon from state prison." (*Id.* at p. 532, italics added.)[8] They argue by analogy that the reduced privacy expectations of persons on mandatory supervision, and the state's overwhelming interest in supervising them, mean that an electronics search condition is per se reasonable for those offenders. *Burgener* does not sweep as broadly as they urge. Upon his release from parole, Burgener signed a " 'notice and conditions of parole' " that stated: " 'You and your residence and any property under your control may be searched without a warrant by any agent of the Department of Corrections or any law enforcement officer.' " (*Burgener*, at p. 528, fn. 10.)[9] During a warrantless search of

---

[8] The People urge that conditions of mandatory supervision are subject to review for reasonableness under the standard articulated in *Burgener*, *supra*, 41 Cal.3d at pages 532–534, and to review for overbreadth if the condition implicates a defendant's constitutional rights (*In re Sheena K.* (2007) 40 Cal.4th 875, 890).

[9] At that time, California Code of Regulations, title 15, section 2511 provided for such notice to all parolees. (Register 77, No. 44 (Oct. 29, 1977) p. 273.) The Legislature subsequently enacted section 3067, which provides that all parolees are

Burgener's apartment, officers found evidence linking him to a homicide. On appeal, he challenged the search on Fourth Amendment grounds and also argued that the parole search condition was improper. (*Burgener*, at pp. 528–532.) The *Burgener* court recognized that "parole conditions, like conditions of probation, must be reasonable [because] parolees retain constitutional protection against arbitrary and oppressive official action." (*Id*., at p. 532; accord *In re Taylor, supra,* 60 Cal.4th at p. 1038 & fn. 8.) However, the court concluded that "[t]he distinction between felony parole and probation justifies the inclusion of the parole search condition in all parole agreements." (*Burgener*, at p. 532.) Parolees have been sentenced to prison because of the risk they pose to society, based on the seriousness of their conduct and offense history. (*Id*. at p. 533.) This increased risk, and a greater need to closely supervise their reintegration into the community, justified a conclusion that the condition was "per se . . . related to future criminality" and thus a "reasonable condition of parole." (*Ibid*.)[10]

As explained, we reject the People's premise that, in this context, those on mandatory supervision are similar in status to those on parole, a premise key to their reliance on *Burgener*. Moreover, *Burgener*'s holding is limited to the conclusion that a

_____

"subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause." (*Id*., subd. (b)(3), former subd. (a), added by Stats. 1996, ch. 868, § 2, p. 4656.)

[10] *Burgener*'s holding that a parole search must be justified by reasonable suspicion (41 Cal.3d at p. 535) was later overruled in *People v. Reyes* (1998) 19 Cal.4th 743, 753 (*Reyes*).

warrantless search of a parolee's property or residence, then mandated by the California Code of Regulations and now imposed by statute (see *ante*, fn. 9), is per se reasonable. *Burgener* did not hold that courts have authority to mandate any other condition for all parolees, or for all individuals in any other category of supervision. Generally, it is the Legislature's role to require, by statutory mandate, uniform conditions for release from confinement. As noted, the Legislature has done so for parolees, probationers, and persons on PRCS, but not for those on mandatory supervision. (See *ante*, fn. 3.) Finally, *Burgener* did not involve an electronics search condition. When it comes to electronics searches we, and the United States Supreme Court, have recognized that the degree of intrusion posed by sweeping access to such devices is great in light of their " 'immense storage capacity' " and the highly personal nature of the information stored on them. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1123, quoting *Riley v. California* (2014) 573 U.S. 373, 393.) The fact that the Legislature has never required a general electronics search condition for any level of postcustodial release demonstrates that such searches are different from many others. In short, the People's interpretation of *Burgener* is overbroad. *Burgener*'s holding related only to the category of parolees and to the single provision for a warrantless search of property and residence. The People attempt to apply its holding to the different status of mandatory supervision and to a significantly more intrusive electronics search condition. We decline to embrace such an expansion.

The People further note that, like parole, mandatory supervision may not be refused when selected by the trial court. (§ 1170, subd. (h)(5)(B).) This mandatory aspect may bear on whether conditions can be justified on a consent rationale, a

question we do not consider here. (See *Samson v. California* (2006) 547 U.S. 843, 852, fn. 3; *Reyes, supra,* 19 Cal.4th at p. 749; *People v. Bravo* (1987) 43 Cal.3d 600, 608.) But it does not otherwise speak to the degree of risk posed by those given a split sentence. The People further argue that imposition of a split sentence "does not reflect any discretionary determination by a trial court" that a defendant should not serve the entire jail term in custody. They overlook the fact that the provision of a default split sentence reflects the *Legislature*'s determination that these low-level felony offenders need not necessarily remain in custody for their entire sentence. Moreover, the trial court exercises its statutorily conferred discretion by choosing to impose a split sentence, rather than departing from the default approach based on the circumstances of the particular case. (See § 1170, subd. (h)(5)(A).)

Finally, the People contend that, "[e]ven if a more individualized inquiry beyond Bryant's status as an offender on mandatory supervision were required, the circumstances here justify the condition, taking into account his lesser expectation of privacy and the closer monitoring that is warranted in the mandatory supervision context." The People's attempt to recast their argument fails because it continues to resist evaluation *of the search condition* based on Bryant's offense and history. The People do point to those particular factors to support a split sentence. They then return to the premise that an electronics search condition is categorically reasonable for anyone who receives such a sentence. Ultimately, this approach is indistinguishable from an argument that Bryant's status as an offender on mandatory supervision is alone sufficient to justify the condition.

The argument runs counter to *Ricardo P.*'s holding that conditions of supervision may not be imposed based on "an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.) The People fail to persuade that all defendants on mandatory supervision are inherently more prone to recidivism, justifying a lesser showing to impose a condition. Further, the *Lent* test does take into account the seriousness of the offense. The first *Lent* factor considers the relationship between the supervision condition and the defendant's crime, and the third factor forbids conditions that are not reasonably related to *future* criminality, balancing the condition's burden with the legitimate interest it serves. (See *Ricardo P.*, at p. 1122; *Lent*, *supra*, 15 Cal.3d at p. 486.) These aspects of the *Lent* test sufficiently account for the seriousness of both offense and offender.

## III. CONCLUSION

In summary, the Legislature has expressly determined that low-level felony offenders will benefit from "community-based corrections programs and evidence-based practices" to "facilitate their reintegration back into society." (§ 17.5, subd. (a)(4)–(5).) Employing the *Lent* test to assess mandatory supervision conditions best implements the Legislature's stated goals. The trial court retains broad discretion to fashion these conditions subject to review for abuse of that discretion.

As in the probation context, imposing an electronics search condition for those on mandatory supervision requires the court to balance the need for meaningful supervision and rehabilitation with the burden imposed by the condition. There may, indeed, be valid reasons for such a condition, but they must

be supported by information in the record relating the condition to the defendant's criminal conduct or personal history. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1120–1123.)

Here, the Court of Appeal struck the electronics search condition "[b]ecause of the significant burden imposed on Bryant's privacy interest and the absence of any information in the record to connect the condition with the goal of preventing future criminality . . . ." (*Bryant II*, *supra*, 42 Cal.App.5th at p. 847.) The People did not seek review of the case-specific outcome here. Instead, they framed the issue for review as one of law involving the test for evaluating all mandatory supervision conditions. In their briefing they state: "As the People conceded in the Court of Appeal, Bryant's electronics search condition would be invalid if assessed under the rubric of *Ricardo P.*, meaning it would be invalid if assessed in the same way as a probation condition." We accept that concession and do not review the Court of Appeal's determination as to the condition imposed on Bryant. We emphasize, however, as we did in *Ricardo P.*, that this case-specific outcome should not be read to "categorically invalidate electronics search conditions. In certain cases, the [defendant's] offense or personal history may provide the . . . court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the [defendant] from future criminality." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1128–1129.)

## IV. DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

PEOPLE v. BRYANT

S259956

Concurring Opinion by Chief Justice Cantil-Sakauye

I agree with the majority's conclusion that discretionary conditions of mandatory supervision are reviewed under the test set out in *People v. Lent* (1975) 15 Cal.3d 481.  I agree, too, that a mandatory supervision condition that allows for a search of an individual's electronic devices is not per se reasonable in all cases.  (See maj. opn., *ante*, at pp. 14–18.)  And I agree that we need not review the particular condition imposed here in light of the Attorney General's concession.  (*Id.* at p. 19.)  I write separately to offer three observations regarding what I view as the narrow scope of the majority opinion in this case.

First, the majority repeatedly states that an analysis under *Lent* involves a "case-by-case" review concerning the reasonableness of a condition of supervision.  (Maj. opn., *ante*, at pp. 1, 4, 5.)  As I noted in *In re Ricardo P.*, we have previously held that certain probation conditions are reasonable under *Lent* "simply by reference to the offense of conviction, without any additional case-specific balancing of benefits and burdens." (*In re Ricardo P.* (2019) 7 Cal.5th 1114, 1134 (conc. & dis. opn. of Cantil-Sakauye, C. J.) (*Ricardo P.*); see, e.g., *People v. Olguin* (2008) 45 Cal.4th 375, 380–381, *People v. Mason* (1971) 5 Cal.3d 759, 764; see also *People v. Burgener* (1986) 41 Cal.3d 505, 532–533 [search condition of parolee is per se reasonable].)  I agree that electronics search conditions imposed in the course of mandatory supervision do not fall into this category of conditions that are reasonable per se.  However, I do not

understand our opinion today to disapprove of the principle articulated in *Olguin* and *Mason*. Nor do I understand our opinion to foreclose the possibility that certain conditions of mandatory supervision may be considered per se reasonable.

Second, the majority rejects the People's assertion that mandatory supervision conditions should be treated like parole conditions, noting in part that "[t]he People fail to persuade that all defendants on mandatory supervision are inherently more prone to recidivism, justifying a lesser showing to impose a condition." (Maj. opn., *ante*, at p. 18.) I agree that *Lent* applies to conditions of mandatory supervision, but I do not perceive the majority to be stating that probation and mandatory supervision are so alike that a probation condition that fails under *Lent* will necessarily fail in the context of mandatory supervision as well.

As the majority recognizes, mandatory supervision is "distinct" from probation and parole. (Maj. opn., *ante*, at p. 4.) Probation is "an act of grace or clemency" (*People v. Moran* (2016) 1 Cal.5th 398, 402, citing *People v. Anderson* (2010) 50 Cal.4th 19, 32) that is "generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120). It is "neither 'punishment' (see [Pen. Code,] § 15) nor a criminal 'judgment' (see [Pen. Code,] § 1445)." (*People v. Howard* (1997) 16 Cal.4th 1081, 1092.) Mandatory supervision, on the other hand, is imposed only when a court has determined that probation is not appropriate. (See Pen. Code, §§ 1170, subd. (h), 1203; *People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1422.)

Thus, although individuals subject to mandatory supervision "are considered lower level offenders compared with

those on parole or [postrelease community supervision]" (maj. opn., *ante*, at p. 11), they are more serious offenders than those granted probation. The case before us does not require that we articulate how these distinctions between probation and mandatory supervision may impact the propriety of certain supervision conditions under *Lent* or from a constitutional perspective, and I do not understand our opinion as reaching those issues outside the specific context presented here.

Third, the majority notes "that the degree of intrusion posed by sweeping access to [electronic] devices is great in light of their ' "immense storage capacity" ' and the highly personal nature of the information stored on them." (Maj. opn., *ante*, at p. 16, quoting *Ricardo P.*, *supra*, 7 Cal.5th at p. 1123, quoting in turn *Riley v. California* (2014) 573 U.S. 373, 393.) But not all electronics search conditions are alike. The degree of intrusion posed by an electronics search condition necessarily depends on the precise contours of the condition at issue. A condition allowing law enforcement unfettered access to all electronic devices at any time of the day or night as was at issue in *Ricardo P.* (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1123) is quite different from a condition tailored to specific data on a particular electronic device. Furthermore, I remain of the view that concerns regarding the burden imposed by such a condition can commonly be "adequately addressed by placing appropriate limits on the ability of [law enforcement] to access [an individual's electronic devices], whether through the selective provision of passwords or other measures." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1139–1140 (conc. & dis. opn. of Cantil-Sakauye, C. J.).) When an "electronics search condition [is] susceptible to such tailoring," concerns about the scope of such a condition would be "better addressed through a separate overbreadth

analysis." (*Id.* at p. 1140 (conc. & dis. opn. of Cantil-Sakauye, C. J.).)

In short, I agree with the majority's principal conclusions even though I remain of the view that the recent expansion of *Lent* at the expense of the overbreadth doctrine is misguided and in some respects counterproductive. (See *Ricardo P., supra,* 7 Cal.5th at p. 1138 (conc. & dis. opn. of Cantil-Sakauye, C. J.).) With the foregoing understanding of the majority opinion, I concur.

**CANTIL-SAKAUYE, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Bryant

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**  XX 42 Cal.App.5th 839
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S259956
**Date Filed:** July 29, 2021

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Michael Villalobos

---

**Counsel:**

David Greifinger, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Xavier Becerra and Rob Bonta, Attorneys General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Zee Rodriguez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David Greifinger
Law Offices of David R. Greifinger
15515 W. Sunset Blvd., No. 214
Pacific Palisades, CA 90272
(424) 330-0193

Zee Rodriguez
Deputy Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013
(213) 269-6124