Filed 8/19/22 P. v. Garcia CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059716 |
| v. | (Super. Ct. No. 19NF3199) |
| ANDRES GUSTAVO GARCIA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John R. Zitny, Judge. Affirmed in part, reversed in part, and remanded.

Tanya Dellaca and California Appellate Project, Los Angeles, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*                \*                \*

Andres Gustavo Garcia appeals the judgment following his conviction on charges of driving under the influence of alcohol and providing false information to a police officer. He does not argue the convictions themselves should be overturned; instead, he challenges two of the conditions of mandatory supervision imposed by the court—one requiring that he "use no unauthorized drugs, narcotics, or controlled substances" and the other requiring that he "cooperate with your mandatory supervision officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment."

Garcia contends the first condition is unconstitutionally vague and suggests it could be violated through the use of over-the-counter drugs, while the second condition is overly broad and improperly delegates judicial authority to the mandatory supervision officer. We agree on both counts. While the Attorney General contends the first condition refers only to prescription medications, he fails to account for the fact it lists "drugs" separately from "controlled substances." The Attorney General claims the second condition is superfluous because the trial court also ordered Garcia to participate in a specific substance abuse program. We are not persuaded. The use of the phrase "any plan" indicates a wider scope than the single plan ordered by the court.

Finally, Garcia challenges the trial court's imposition of booking fees on the ground that new legislation, which became effective on July 1, 2021, repealed the court's authority to collect them. The Attorney General agrees the fees should be vacated and so do we.

We consequently reverse that portion of the judgment related to those challenged supervision conditions and booking fees; we remand the case to the trial court with directions to vacate the booking fees and either strike or revise the supervision conditions.

## FACTS

Garcia was arrested after the car he was driving was involved in a minor collision. The other driver called 911 and reported Garcia was "drunk." An expert opined, based on Garcia's blood alcohol level several hours after his arrest, that he may have had a blood alcohol level of .23 or .24 percent at the time of the collision.

Garcia was charged with driving under the influence of alcohol (Count 1) and with a blood alcohol of 0.08 % or more (Count 2) in violation of Vehicle Code section 23152, subdivisions (a) and (b), on March 15, 2019. Additionally, the information alleged as to Counts 1 and 2 that Garcia had three prior convictions for driving under the influence of alcohol within 10 years of the current offenses. (Veh. Code, § 23550, subd. (a).) Garcia was also charged with knowingly giving false information to a peace officer in the performance of his/her duties in violation of Vehicle Code section 31, subdivision (a) (Count 3).

A jury found Garcia guilty of driving under the influence of alcohol and providing false information to a police officer. The court found true the allegation that Garcia had three prior convictions for driving under the influence within the past 10 years.

The court sentenced Garcia to three years: 15 months of incarceration in the county jail, followed by 21 months of mandatory supervision. Among the conditions of the mandatory supervision were that Garcia must "use no unauthorized drugs, narcotics, or controlled substances," and must "cooperate with your mandatory supervision officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment." The court also ordered that Garcia complete the . . . 18-month alcohol offender program."

The court also ordered Garcia to pay various fees, including the cost of mandatory supervision and booking fees to the Fullerton Police Department in the amount of $265 and to the Orange County Sheriff in the amount of $235.

3

**DISCUSSION**

1.     *Conditions of Mandatory Supervision*

Garcia challenges two of the conditions of his mandatory supervision—the requirement that he "use no unauthorized drugs, narcotics, or controlled substances" and the requirement that he "cooperate with [his] mandatory supervision officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment."[1]

He contends the first condition is vague—because "the language '*unauthorized drugs*' is not sufficiently precise for [him] to know what is required of him"—and is overbroad because the phrase could include "over-the-counter" drugs.

Similar to probation conditions, mandatory supervision conditions are evaluated for reasonableness on a case-by-case basis, considering the relationship between the offender's crime, the terms of the challenged condition, and its relation to the probationer's future criminality. (*People v. Bryant* (2021) 11 Cal.5th 976, 981, 983.) Trial courts generally have broad discretion to create and impose the conditions to promote rehabilitation and public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) However, a condition ""must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated."" (*People v. Barajas* (2011) 198 Cal.App.4th 748, 753.)

A condition "is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.'" (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

---

[1]     Garcia acknowledges he did not object to these conditions in the trial court, but relies on *In re Sheena K.* (2007) 40 Cal.4th 875, 889, for the proposition that the assertion a supervision condition is unconstitutionally overbroad on its face may be asserted for the first time on appeal. The Attorney General concedes the point.

4

The Attorney General argues the condition is not vague "because it can reasonably be understood to include only illegal drugs and unprescribed prescription drugs." It seems likely that might be what the court meant to convey—a prohibition that applies only to unauthorized prescription and illegal drugs—but the assertion does not account for the fact that prescription medications fall within the category of "controlled substances" under the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.; see, e.g., Health and Saf. Code, § 11007, which defines a "'[c]ontrolled substance'" as "a drug, substance, or immediate precursor which is listed in any schedule in Section 11054, 11055, 11056, 11057, or 11058," and Health and Saf. Code, § 11153 [governing controlled substance prescriptions].)

Thus, a prohibition that applies to both "drugs" and "controlled substances" would seem to govern drugs that are *not* prescription medications—the opposite of what the Attorney General posits. This condition is unconstitutionally vague.

Garcia contends the second condition—requiring that he "cooperate with your mandatory supervision officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment"—must be stricken because it represents an improper delegation of judicial authority to Garcia's supervision officer. Garcia argues the condition gives the supervision officer authority to designate additional mental health or substance abuse plans beyond the single 18-month program ordered by the court.

We agree that such a delegation would be improper. As explained in *In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690, "'[t]he judicial power in this state is vested in the courts,'" and it is the judiciary's function to "'"'declare the law and define the rights of the parties under it.'"' . . . and "to make binding orders or judgments.""'" Although the court "can properly delegate . . . 'the ministerial tasks of overseeing the right as defined by the court,'" it cannot delegate the authority to determine the very scope of that right. (*Ibid*; see also *People v. Cervantes* (1984) 154 Cal.App.3d 353, 357,

fn. omitted ["[Penal Code s]ection 1203.1 . . . grant[s] the discretion to determine the terms and conditions of probation to the court, not to the probation officer"].)

In *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil*), the court disapproved a probation condition that prohibited the probationer from associating with any persons designated by his probation officer. As the appellate court explained, the problem was that the lower court "did not in any way define the class of persons who could be so designated." (*Id.* at p. 1358.) While the appellate court acknowledged "[t]here are many understandable considerations of efficiency and practicality that make it reasonable to leave to the probation department the amplification and refinement of a[n] order . . . , the court's order cannot be entirely open-ended. It is the court's duty to determine the nature of the prohibition placed on a defendant as a condition of probation. (*Id.* at pp. 1358-1359.)

The Attorney General agrees such a delegation of judicial authority is improper, but counters the condition in this case is distinguishable from *O'Neil* because it does not explicitly state that the mandatory supervision officer can designate additional programs. Instead, since it is silent on the point, the Attorney General argues it is "implicit in [the] condition . . . that 'any plan' means 'any plan ordered by the court.'" Moreover, according to the Attorney General, "the court did specifically define the plan to be followed by appellant. It ordered that '[y]ou must attend and complete the alcohol offender program, and that is the 18-month alcohol offender program.'"

But the challenged condition does not say Garcia must "cooperate with your probation or mandatory supervision officer in the 18-month alcohol offender program ordered by the court." It says Garcia must cooperate with his mandatory supervision officer in a much broader category of potential programs.

Ultimately, the Attorney General suggests we might order the condition clarified to state Garcia "is to 'cooperate with his mandatory supervision officer in *any*

6

*court-ordered plan* for psychological, psychiatric, alcohol and/or other drug treatment.'" We agree and therefore do so in connection with the remand.

2.      *Booking Fees and Mandatory Supervision Fee*

Garcia also contends we must reverse the portion of the judgment that requires him to pay booking fees of $265 to the Fullerton Police Department and $235 to the Orange County Sheriff, and to pay the cost of his mandatory supervision.

He points out that in 2020, the Legislature passed Assembly Bill No. 1869 (2019-2020 Reg. Sess.) to "eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system." (Stats. 2020, ch. 920, § 2 (Assembly Bill 1869).)

Among other provisions, Assembly Bill 1869 added Government Code section 6111, which became effective on July 1, 2021. It states that "the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).) Assembly Bill 1869 also repealed the statute authorizing the probation supervision fee, Penal Code section 1203.1b. (See *People v. Clark* (2021) 67 Cal.App.5th 248, 257 ["Assembly Bill 1869 applies to the [Pen. Code § 1203.1b] fee"].)

Further, as explained in *In re Estrada* (1965) 63 Cal.2d 740, we presume that ameliorative changes to the criminal law apply retroactively to all judgments that are not yet final. (*Id.* at pp. 745, 747–748.) The Attorney General concedes the *Estrada* rule applies here and precludes collection of the challenged booking fees and mandatory supervision fee in this case.

7

## DISPOSITION

The judgment is reversed as to the challenged mandatory supervision conditions and booking fees; we remand the case to the trial court with directions to strike the challenged booking fees and to either strike or clarify the challenged mandatory supervision conditions in accordance with the views expressed herein. In all other respects, the judgment is affirmed.


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


MARKS, J.*

   *Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.