Filed 6/9/25  P. v. Muendel CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100824 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE016747) |
| v. | |
| TAYLOR MUENDEL, | |
| Defendant and Appellant. | |

A jury found defendant Taylor Muendel guilty of the unlawful transportation of fentanyl.  The trial court imposed a split four-year sentence, with defendant to serve the final two years on mandatory supervision.  Condition 13 of defendant's mandatory supervision included an electronics search condition.  Defendant's only contention on appeal is that condition 13 is unconstitutionally overbroad on its face.  We will affirm.

1

BACKGROUND

An amended information charged defendant with unlawful transportation of fentanyl (Health & Saf. Code, § 11352, subd. (a); count one) and unlawful transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count two).

*The Trial*

On October 6, 2022, Folsom Police Department Detective William Maslak observed a truck with extremely dark window tinting driving out of the entrance of a gas station. The truck had a white rear light which, like the dark window tinting, was a Vehicle Code violation. Detective Maslak initiated a vehicle stop, but the driver of the truck continued driving for approximately a half-mile, swerving from lane to lane and into a bike lane. Eventually, the truck pulled into a parking lot.

Detective Maslak had defendant, the driver of the truck, step out of the vehicle and sit on the ground. Detective Maslak's partner, Detective Andrew Graham, stayed with defendant while Maslak returned to the truck. Detective Maslak observed defendant's cellphone on the truck seat and two baggies containing what appeared to be narcotics on the floor of the truck. After Detective Graham moved defendant from the ground to the police vehicle, Detective Maslak saw two more baggies of narcotics on the ground where defendant had been sitting.

A criminalist, who testified as an expert in the field of controlled substances analysis, tested the substances from the four baggies. Two of the baggies contained a solid substance and the other two contained a crystalline substance. According to the criminalist's testing, one solid substance weighed 22.90 grams and contained fentanyl. The other solid substance weighed 16.59 grams and contained both fentanyl and a chemical precursor to fentanyl. One of the crystalline substances weighed 14.73 grams and contained methamphetamine. The other crystalline substance weighed 8.17 grams and contained methamphetamine.

2

Detective Graham testified as an expert in the field of possession and sale of narcotics. He testified that the cumulative total of 22.9 grams of methamphetamine amounted to 229 dosage units. Detective Graham testified that, based on the amount of methamphetamine, he could "almost certainly" say that defendant possessed methamphetamine for the purpose of sale. As for the fentanyl, Detective Graham testified that the cumulative total of 39.49 grams amounted to 19,745 dosage units. He testified that there was "no reason for any one particular person to possess that much fentanyl for any reason other than the purpose of sale."

Bryan Vevera, a criminal investigator in the Sacramento County District Attorney's Office, performed a cellphone extraction, and the parties stipulated that defendant was the sender of certain text messages appearing in exhibits 12 through 20. According to Vevera, those messages were "excerpts from the chats via Messaging or Facebook Messaging . . . ." A representative sampling of the messages follows.

In a text message on February 25, 2022, someone texted defendant asking if he had any "fetey," which Detective Maslak testified referred to fentanyl, and that the sender had a $10 supermarket gift card. Defendant responded that he did.

On April 23, 2022, someone texted, "[C]an I get a 20 of fetey from you?"

On June 20, 2022, a text message sent to defendant stated that someone "needs fetey right now." Defendant responded, "I only F around with the good shit. Everyone knows that."

In another message, defendant texted, "I get the lbs," by which, according to Detective Maslak, defendant was stating that he had "a plethora of product."

On July 4, 2022, someone texted asking defendant what he had been doing, and defendant responded, "Same old shit. Running the fetey game."

On July 30, 2022, defendant texted someone stating, "I got your half a G," referring to half a gram of narcotics.

3

According to Detective Maslak, in a text exchange on August 14, 2022, defendant was providing the recipient with his prices per gram for narcotics. Defendant informed the recipient, "[a] hundred for 1.5" and "80 for 1.0." The other person stated that she could "Cash App right now," and defendant responded, "Okay or PayPal or Venmo or Google Pay." According to Detective Maslak, many narcotics dealers use Cash App, Venmo, Zelle, and other online payment applications to conduct drug transactions.

In a message on August 24, 2022, someone texted defendant stating, "[T]hey tried the stuff you gave me. They said it's not that good." Defendant responded, "If you want to get some better shit, I can." Subsequently defendant texted, "I've been doing it for over 2 years, and I know I smoke way more shit than they do. I guarantee I can smoke them under the table. I get my shit in the Bay Area straight off the load. I don't give them my fire shit cuz they would die if they smoked it."

Detective Graham testified that the text messages in exhibits 12 through 20 supported his conclusion that defendant possessed narcotics for the purpose of sale.

*Verdict and Sentencing*

The jury found defendant guilty on count one, unlawful transportation of fentanyl, and not guilty on count two, unlawful transportation of methamphetamine. The trial court sentenced defendant to a split middle-term sentence of four years on count one, with the concluding two years suspended during which time defendant would be on mandatory supervision. (See Pen. Code, § 1170, subd. (h)(5)(B).)

Defense counsel asked the trial court to strike mandatory supervision condition 13, a search condition, and stated her intention to "lodge an objection." The trial court responded: "The crime in this case was done entirely through cell phones. It would make no sense to me to– [¶] I do that wherever the crime is removed from the instrument, because I understand how deeply private, in this day and age, cell phones are. Your client chose to use these devices for the purpose of committing these crimes. So, I

4

cannot, in this case, grant that request. That's denied." Defense counsel reiterated her desire to "lodge an objection."

Condition 13 provided: "P[enal]C[ode] 1546 searchable–Defendant shall submit his/her person, place, property, automobile, electronic storage devices, and any object under his/her control, including but not limited to cell phones and computers, to search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his/her presence or further consent. Defendant being advised of his/her constitutional and statutory rights pursuant to Penal Code section 1546 et seq. in this regard, and having accepted probation, is deemed to have waived same and also specifically consented to searches of his/her electronic storage devices. Defendant shall provide access to any electronic storage devices and data contained therein, including disclosing and providing any and all information necessary to conduct a search . . . ."

## DISCUSSION

Defendant argues that the electronic search condition in condition 13 is unconstitutionally overbroad on its face. He asserts the condition is neither carefully tailored nor reasonably related to the state's interest in reformation and rehabilitation. Defendant argues that, "on its face, the electronic search condition could include appellant being forced to disclose passwords and electronic information related to private health care, bank information, and a whole cadre of sensitive and private information that is not related to the purpose of supervision." While defendant concedes that "certainly communications could be appropriate[ly] supervised because text messages were used by appellant to commit drug sales," he further argues that the electronics search condition here "is not limited to such appropriate supervision concerns." We conclude that condition 13 is not unconstitutionally overbroad on its face.

"Trial courts have broad discretion to 'impose . . . reasonable [probation] conditions, as [they] may determine are fitting and proper . . . for the reformation and

5

rehabilitation of the probationer . . . ." (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 992-993.) "A condition of mandatory supervision may be challenged on the same grounds as a condition of parole, which in turn, may be challenged based on the same standards as developed for challenging probation conditions." (*People v. Brand* (2021) 59 Cal.App.5th 861, 866; see also *People v. Bryant* (2021) 11 Cal.5th 976, 986 ["in general, the conditions of probation and mandatory supervision are . . . intended to be handled in the same way," (fn. omitted)].)

A condition "that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Thus, a condition " 'is unconstitutionally overbroad . . . if it (1) "impinge[s] on constitutional rights," and (2) is not "tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation." ' " (*People v. Prowell* (2020) 48 Cal.App.5th 1094, 1099.) " 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Salvador* (2022) 83 Cal.App.5th 57, 63.) Whether a condition "is unconstitutionally . . . overbroad presents a question of law, which we review de novo." (*People v. Stapleton, supra*, 9 Cal.App.5th at p. 993.)

Defendant expressly limits his constitutional overbreadth argument to a facial challenge. He argues that "the question presented to this court is purely a legal question that requires no reference to the underlying record," and discusses the overbreadth of the condition "on its face." In his reply brief, he argues even more explicitly that the People's reliance on the underlying facts is "misplaced" because his argument is "that the electronic search condition is overbroad on its face . . . ." The phrase "as applied" does not appear in defendant's briefing. In short, defendant advances a facial challenge only,

and does not raise the argument that condition 13 is unconstitutionally overbroad *as applied to him*.

"A facial challenge 'does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts.' " (*People v. Patton* (2019) 41 Cal.App.5th 934, 946, quoting *In re Sheena K., supra*, 40 Cal.4th at p. 885.) "The claim is that a condition cannot have *any* valid application, without relying on any facts in the sentencing record." (*Patton,* at p. 946.) In other words, on a facial overbreadth challenge to a condition of mandatory supervision, we consider only whether the condition, in the abstract and not as applied to the defendant, is not sufficiently narrowly tailored to the state's legitimate interest in reformation and rehabilitation *in all possible applications*. (See *In re Sheena K.,* at p. 885.)

We conclude that condition 13 is not insufficiently narrowly tailored to the state's legitimate interest in reformation and rehabilitation in all possible applications so as to render it facially invalid. As the Supreme Court has stated, electronic search conditions are not categorically invalid. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1128 ["Our holding does not categorically invalidate electronics search conditions"].) Although application of condition 13 could be constitutionally overbroad as applied to certain persons subject to probation or mandatory supervision, in other circumstances it may be entirely appropriate and constitutional. The criminal offense or a defendant's personal history may provide a sufficient basis on which to conclude the condition is a proportional means of deterring future criminality. (See *id*. at pp. 1128-1129.) In those cases, the imposition of such supervisory conditions would be constitutional. Because there could be circumstances in which such a condition is appropriate, we must reject the claim that the electronic search condition is unconstitutionally overbroad on its face.

Defendant relies on *In re Malik J.* (2015) 240 Cal.App.4th 896, in which the appellate court found an electronics search condition to be overbroad. (*Id*. at pp. 899,

902-904.) However, *Malik J.* did not involve the same electronics search condition as the one at issue here, and therefore *Malik J.* is not an authority for the premise that *this particular search condition* is overbroad on its face. Moreover, *Malik J.* is distinguishable because the appellate court in that case, at least to some extent, considered the search condition in light of underlying facts rather than strictly in the framework of a facial challenge. The defendant in *Malik J.* advanced the argument that the condition failed under the test established in *People v. Lent* (1975) 15 Cal.3d 481. (*In re Malik J.,* at pp. 901-902.) The Court of Appeal found that "the condition is overbroad" and ordered it "to be modified to conform to constitutional requirements." (*Id.* at p. 899.) As the Supreme Court has summarized it, the Court of Appeal in *Malik J.* addressed whether the "condition allowing officers 'to search a cell phone to determine whether [the defendant] is the owner' was reasonable *in light of the defendant's 'history of robbing people of their cell phones.'* " (*In re Ricardo P., supra*, 7 Cal.5th at p. 1129, italics added, parenthetically summarizing *In re Malik J.,* at p. 902.) Because it did not involve the same search condition, and because its consideration of the search condition was not limited to a strict facial overbreadth analysis, *Malik J.* does not support defendant's argument that the search condition here is overbroad on its face.

Lastly, we note that we need not address defendant's contention that he was denied the effective assistance of counsel based on his trial attorney's alleged failure to adequately articulate her reasons for objecting to condition 13 in the trial court. This would be relevant only to whether defendant preserved or forfeited his overbreadth challenge. However, defendant expressly limits his challenge to a facial one. The forfeiture rule does not apply to a facial challenge raising a pure question of law. (*In re Sheena K., supra*, 40 Cal.4th at p. 887.) While forfeiture would apply to an as-applied challenge not presenting a pure question of law (*id.* at p. 889), defendant does not raise an as-applied challenge here. Thus, whether defendant's trial attorney sufficiently explained

8

her reasons for objecting to condition 13 in the trial court is immaterial to any issue presented on this appeal.

## DISPOSITION

The judgment is affirmed.

_____\\s\\_____,

Krause, J.

We concur:

_____\\s\\_____,

Hull, Acting P. J.

_____\\s\\_____,

Boulware Eurie, J.

9