Filed 11/25/25  P. v. Dario CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROLAND BENEDICT DARIO,<br><br>Defendant and Appellant. | A172141<br><br>(Napa County<br>Super. Ct. No. 22CR001199) |

Roland Benedict Dario pleaded no contest to one count of accessory after the fact (Pen. Code,[1] § 32) to a second degree burglary arising out of a shoplifting offense in which he and another perpetrator worked together.  He was placed on formal probation for a term of two years, subject to a set of standard probation conditions.  In this appeal from his sentence, he challenges an electronic search condition (Probation Condition 13) on the ground it is invalid under *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) and *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and is unconstitutionally overbroad.

The Attorney General argues that Dario's constitutional challenge to Probation Condition 13 was not raised below and has been forfeited.  Should

---

[1] Undesignated statutory references are to the Penal Code.

1

we reject his forfeiture argument, the Attorney General does not defend Probation Condition 13 as drafted and effectively concedes error by proposing that we modify the challenged condition in order to save it on appeal.

We reject the Attorney General's claim of forfeiture; we agree with Dario that Probation Condition 13 is invalid under *Lent* and *Ricardo P.*; and we do not agree that the Attorney General's proposed modification cures the defect, at least not wholly. But in accord with *Ricardo P.*, we will vacate Probation Condition 13 and remand for consideration of whether a more narrowly tailored electronic search condition may be devised and is justified on this record.

## I. BACKGROUND

One evening in March 2022, surveillance cameras at a Walmart store in American Canyon showed Dario and his codefendant, Abraham Lopez, enter the Walmart parking lot and park their car. Dario and Lopez entered Walmart together. Lopez filled a shopping cart with a tote bag and several items, then gave the shopping cart to defendant. Lopez retrieved a second shopping cart and filled it with groceries. Dario went through the self-checkout registers, failed to pay for some of the items, and then exited the Walmart. Lopez paid for all of his items and left the store. Asset protection associates approached and spoke to Dario, who denied that any theft occurred.

Local police were alerted, and when officers arrived, an asset protection associate told them that Dario had left the store and was walking through the parking lot. The officers located and detained both Dario and Lopez, both of whom were identified by the asset protection associate. Additionally, the officers found parked in the Walmart parking lot the car Dario and Lopez arrived in. It matched the license plate provided by Walmart staff. Officers

searched the car and found a loaded firearm magazine and a firearm. There was also evidence Dario and Lopez had been in the car.

Following a preliminary hearing, an information was filed charging Dario as follows: count 1, a felony violation of section 29800, subdivision (a)(1); count 2, a felony violation of section 30305, subdivision (a); count 3, a felony violation of section 25850, subdivision (c)(1); count 4, a felony violation of section 182, subdivision (a)(1); and count 5, a misdemeanor violation of section 484, subdivision (a). Dario was arraigned and entered a not guilty plea to the charges. In a negotiated disposition, he later pled no contest to an amended count 6, a felony violation of section 32 as an accessory after the fact to second degree burglary. In exchange for the plea, counts 1 through 5 were dismissed.

Without getting into the confidential details in the probation report, suffice it to say that, at sentencing, the probation department recommended, "based upon [Dario's] criminal history involving burglary, possession of stolen property and drug sales, an electronic search term" should be imposed, since "the use of electronic devices is commonly tied to these criminal behaviors and appears reasonable and necessary for the purpose of deterring [him] from future criminality."

At sentencing, Dario was granted formal probation for a period of two years, ordered to serve 60 days in jail with one day actual credit, and ordered to comply with a set of standard conditions of probation, including Probation Condition 13, which states as follows: "[You shall s]ubmit all electronic devices under your control to search and seizure by any probation or law enforcement officer at any time of the day or night with or without a search warrant, arrest warrant, or reasonable suspicion. You shall also disclose any and all passwords, passcodes, password patterns, fingerprints, or other

3

information required to gain access into any of the aforementioned devices or social media accounts as requested by any probation or law enforcement officer."

Dario's counsel objected to proposed Probation Condition 13 as unreasonable and claimed there was no "nexus for the electronic search in this case." The prosecutor argued that the electronic search term would be "a useful tool for Probation in order to enforce the probation terms, including staying away from Wal-Mart in this case, as well as the other drug and alcohol . . . terms in this case." The trial court agreed with the prosecution and, acknowledging it was doing so over defense objection, imposed Probation Condition 13 as written. It found there was a nexus "in large part due to the fact [Dario was] not operating alone, and that is largely the way that we communicate these days is by phone, text messages, et cetera."

Dario filed a timely notice of appeal. The sole issue presented is whether Probation Condition 13 is constitutionally overbroad.

## II. DISCUSSION

Relying on *Ricardo P.*, *supra*, 7 Cal.5th 1113, and *Lent*, *supra*, 15 Cal.3d 481, Dario attacks Probation Condition 13 as unreasonable and unconstitutionally overbroad and asks that we order it stricken. The Attorney General responds, first, that Dario failed to raise this issue below and therefore forfeited it, and, second, that in the event we reach the merits, the electronic search condition is not overbroad if modified. We largely agree with Dario.

In *Lent*, our Supreme Court held that " 'a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1115.) The court

4

"adopted the following three-part test . . . : 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*Id.* at p. 1118.) "The *Lent* test 'is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*Ibid.*) The third prong of the *Lent* test requires a narrow tailoring evaluation to determine whether the burden an electronic search condition imposes on the probationer's privacy is reasonably proportionate to the risk of future criminality. (*Id.* at pp. 1122–1123.)

Initially, we reject the Attorney General's invitation to deem Dario's overbreadth challenge forfeited. Whether we view the issue he raises as a facial challenge or an as-applied challenge,[2] he preserved it by objecting to the reasonableness of Probation Condition 13 and pointing out there was no nexus between any use of electronic devices and his conviction offense. On the merits, we also agree with Dario, but in accordance with *Ricardo P.* we will vacate Probation Condition 13 and remand to the trial court for consideration of whether, in light of the risks of future criminality, a more tailored version of Probation Condition 13 may be devised.

The first step of the *Lent* test, the so-called "nexus" step, is the only prong of the test the trial court addressed. In evaluating that element of *Lent*, some courts have found that even a "somewhat attenuated" connection between electronic devices and criminal activity by the probationer will meet

---

[2] See *People v. Patton* (2019) 41 Cal.App.5th 934, 947 (refusing to entertain constitutional objection for the first time on appeal under *In re Sheena K.* (2007) 40 Cal.4th 875, 887–888 where no such objection was raised at sentencing and "[t]he closeness of fit between the condition imposed and defendant's rehabilitation veers into as-applied territory").

the test.  (*People v. Salvador* (2022) 83 Cal.App.5th 57, 64; *People v. Appleton* (2016) 245 Cal.App.4th 717, 724.)  But even if the requisite nexus to criminal activity need only be attenuated, there must still be something more than speculation to justify it.  The trial court's sweeping comment that "[Dario was] not operating alone, and . . . the way that we communicate these days is by phone, text messages, et cetera" does not meet the test, since, if accepted, such an indefinite generalization would render prong one meaningless.  Moving to *Lent* prong two, Probation Condition 13 indisputably fails that element of the test because of Condition 13's intrusion into a vast range of private communications.  We also conclude that Probation Condition 13 fails at prong three, since the trial court never mentioned any ends-means evaluation and made no effort to explore narrow tailoring.

The Attorney General pushes back on whether Probation Condition 13 fails at prongs one and three.  According to him, Probation Condition 13 is aimed at ensuring that Dario is not using his electronic devices or social media to engage in criminal activity.  This argument tracks the trial court's rationale that the use of electronic communication is so ubiquitous in today's society that there must be a nexus between electronic device use and Dario's concerted criminal activity with Lopez.  As we see it, however, that just confirms the erroneous nexus determination.  The ends-means inquiry would collapse into nothingness if applied against such an indefinite justifying rationale.

Apparently recognizing this flaw in the trial court's *Lent* analysis, the Attorney General suggests we may devise a modification to save Probation Condition 13 on appeal.  Probation Condition 13 would be valid, he contends, if it were modified (1) to make clear that "any search of appellant's electronic devices is for the purpose of ensuring that he is complying with the conditions

6

of his probation and is limited to searches of his photos and communications via text messages, voice mail messages, call logs, e-mail accounts, and social media accounts"; and (2) to bar electronic searches of "online games, musical libraries, medical records, and electronic books, magazines, and newspapers."[3]

As modified in this manner, the Attorney General argues that Probation Condition 13 survives scrutiny because it allows probation authorities to monitor Dario's communications and "ensure he abides by the terms of his grant of probation and does not commit additional criminal offenses." For this position, he relies on *Malik J.*, *supra*, 240 Cal.App.4th 896, and *In re Q.R.* (2020) 44 Cal.App.5th 696, two juvenile cases in which the minors committed offenses involving cell phones. (*Malik J.*, at p. 902 [referencing the minor's "history of robbing people of their cell phones and his claim that he does not himself own a cell phone"]; *Q.R.*, at p. 704 [the "minor *used* an electronic device to commit both crimes he admitted"].)

Nothing in the record indicates that Dario used a cell phone or any other electronic device to facilitate the offense he was convicted of in this case. That is not necessarily dispositive, to be sure. *Ricardo P.* involved a scenario comparable to the one before us where there was no direct evidence that an electronic device had been used by the juvenile probationer to facilitate his commitment offense. The petitioner was made a ward of the court for admitted commission with two co-perpetrators of two residential

---

[3] Cf. *In re Malik J.* (2015) 240 Cal.App.4th 896, 906 (*Malik J.*) (to cure overbreadth, an electronics condition was ordered modified on appeal "to omit reference to Malik's family and passwords to social media sites, and to authorize warrantless searches of electronic devices in Malik's custody and control only after the device has been disabled from any internet or cellular connection and without utilizing specialized equipment designed to retrieve deleted information that is not readily accessible to users of the device").

burglaries. But given the ward's admission that he may not have been " 'think[ing] clearly' " because of marijuana use when he committed the offense, the juvenile court reasoned that effective probation supervision required monitoring of the ward's internet communications because juveniles tend to engage in online " 'boasting' " of their illegal activities such as marijuana use. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1116–1117.)

The probation condition in *Ricardo P.* required the ward to "provide probation officers full access, day or night, not only to his social media accounts but also to the contents of his e-mails, text messages, and search histories, all photographs and videos stored on his devices, as well as any other data accessible using electronic devices, which could include anything from banking information to private health or financial information to dating profiles." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1123.) On appeal, the petitioner challenged the juvenile court's online " 'boasting' " rationale as speculative. The Court of Appeal "apparently 'share[d] some of Ricardo's skepticism about the prevalence of minors' boasting on the Internet about marijuana use,' [but] declined to reject the juvenile court's findings as 'speculative.' " (*Id.* at p. 1117.) Still, it found the challenged condition to be constitutionally overbroad, and remanded for consideration of whether a more narrowly tailored condition might be devised. (*Id.* at p. 1117.)

On review, the Supreme Court held the condition was invalid under *Lent*, finding that the sweeping electronic search condition imposed a burden on the petitioner's privacy that was "substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1119.) "If we were to find this record sufficient to sustain the probation condition at issue," the Supreme Court held, "it is difficult to conceive of any case in which a comparable

condition could not be imposed, especially given the constant and pervasive use of electronic devices and social media by juveniles today. In virtually every case, one could hypothesize that monitoring a probationer's electronic devices and social media might deter or prevent future criminal conduct." (*Id.* at p. 1123.)

Under *Lent*, the third prong reasonableness determination as explained and applied in *Ricardo P.* requires a "case-by-case," record-specific "balancing of factors." (*People v. Bryant* (2021) 11 Cal.5th 976, 983, 984 [extending and applying the holding in *Ricardo P.* to conditions of mandatory supervision].) In *Bryant*, the Supreme Court's most recent application of *Lent*, the court emphasized the fact-bound nature of the prong three reasonableness test, explaining there that the " '*Lent*[] third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality.' " (*Bryant*, at p. 984.) The court also made clear that it is insufficient to say, categorically, that electronic surveillance improves effective probation supervision. "[A] probation condition cannot be justified solely on the basis that it enhances the effective supervision of the probationer without regard for the burden it places on the probationer[,]" the court said. (*Ibid.*)

From *Ricardo P.* and from *Bryant*, "we glean the following guidelines for determining when an electronic search condition survives the third prong of *Lent* . . . ." (*In re Alonzo M.* (2019) 40 Cal.App.5th 156, 165.) "First, there must be information in the record establishing a connection between the search condition and the probationer's criminal conduct or personal history— an actual connection apparent in the evidence, not one that is just abstract or hypothetical." (*Id.* at p. 166, citing *Ricardo P., supra,* 7 Cal.5th at pp. 1120–1121.) Even though a direct nexus between the search condition and

9

underlying offense is not always required, there still must be " 'information in a probation report that raises concerns about future criminality . . . .' " (*In re Alonzo M.*, at p. 166.)

To be sure, the *Ricardo P.* court declined to address whether "there [was] sufficient basis in the present record to support the Court of Appeal's suggestion that the juvenile court, on remand, may restrict the condition to search of 'electronic information that is reasonably likely to reveal whether Ricardo is boasting about his drug use or activity, such as text and voicemail messages, photographs, e-mails, and social-media accounts.' Nor do we address how the parameters of such a condition might be delineated." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1124.) Thus, as we read the state of the law on this point, it is important to bear in mind that the disposition in *Ricardo P.* was a remand for further consideration, with the third prong balancing analysis left to the juvenile court on the record presented.

We will resolve this case in the same manner. Given the case-by-case, record-specific nature of the *Ricardo P.* inquiry, we are disinclined on appeal to determine whether there is a sufficient basis in the record here, rooted in Dario's "criminal conduct or personal history" (*In re Alonzo M.*, *supra*, 40 Cal.App.5th at p. 166), to justify monitoring some specific kind of behavior indicating potential involvement in some specific kind of illegality—e.g., electronic communication with certain individuals or groups about certain topics or activities—so we will remand for consideration of narrow tailoring under *Ricardo P.* While the record does not warrant the conclusion that an electronic device was used in the commitment offense here, there may be aspects of Dario's past criminality and personal history that could justify a need for electronic monitoring, despite the burden.

Whether electronic monitoring is justified on the record presented, and if so in what form, is not for us to decide on appeal. The trial court is best positioned to address those issues since they will require consideration of, among other things, the risks posed by this defendant given his particular criminal history; the specific nature and recency of the offenses he has committed; the way those offenses were committed; and whether any identifiable set of crime partners has been involved in his past criminality.

All we can say at this point is that it is insufficient to say categorically—as the Attorney General appears to say—that, so long as especially sensitive areas of privacy are walled off from surveillance (*Malik J.*, *supra*, 240 Cal.App.4th 896), there is a compelling need to monitor everything Dario does and says in cyberspace in the name of effective probation supervision. If the record warrants such a conclusion in this case, that is a determination for the trial court. The type of modification adopted in *Malik J.* may be necessary and appropriate, as the Attorney General concedes, but it is not always sufficient under *Ricardo P.*

## III. DISPOSITION

Probation Condition 13 is vacated subject to possible reinstatement in some form upon remand. The cause is remanded for further proceedings consistent with this opinion, and the sentence is otherwise affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

11